WILLIAM NELSON, Jr., Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

Under the provisions of the act of 1865 relating to sewerage and drainage in the city of New York (chap. 381, Laws 1865), as amended in 1866 (chap. 551, Laws of 1866), the whole power and discretion in the matter of purchasing materials to be used in the construction of sewers was vested in the Croton aqueduct board, and no action on the part of the common council authorizing a contract therefor was required. This power, by the charter of 1870 (chap. 137, Laws of 1870), was transferred to the commissioner of public works.

Under the provisions of the charter, in force at the time of the passage of the act of 1866 (§ 28, chap. 446, Laws of 1857), prohibiting the incurring of any expense, unless an appropriation covering it has previously been made; and under the provisions of said act (§§ 9, 10), authorizing the Croton aqueduct board to contract for materials used in the construction of sewers, and issue assessment bonds not exceeding $100,000 in amount to procure funds to pay therefor, and for certain other expenses, the power of the board to incur a liability on the part of the city for such materials was

limited to that sum, it being the extent of the appropriation, and under the provisions of the charter of 1870 (§ 101) and the amendment of 1871 (§ 8, chap. 574, Laws of 1871), prohibiting any such appropriation being exceeded, a contract by the commissioners of public works for sewer materials exceeding in amount the sum of $100,000 was illegal, and not binding upon the city, at least for the excess.

Where, however, a contract in excess of said sum was made by the commissioner, and the materials contracted for were in good faith delivered to and received by the city, the excessive expenditure is recognized and sanctioned, and its payment provided for, by the provision of the act of 1872 relating to public works in said city of New York (§ 8, chap. 872, Laws of 1872), which authorizes the comptroller, in addition to amounts previously authorized, to issue assessment bonds to the amount of $100,000 annually, to be applied in payment of " the expenses incurred in the construction of sewers," etc. ; by said provision the contract was validated, and after a sufficient time has elapsed to enable the comptroller to procure funds by the issue of bonds under said provision to pay for the materials so contracted for, an action can be maintained against the city upon the contract.

*It seems*, that where the city has obtained materials without authority under such a void contract, and has used it and received the value thereof from the property owners by means of assessments, it is liable for the actual value of the property or what it obtained therefor; it will not be concluded in such case by the contract-price.

*Nelson* v. *The Mayor, etc.* (5 Hun, 190) reversed.

(Argued November 24, 1875 ; decided January 18, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial. (Reported below, 5 Hun, 190.)

The nature of the action and the material facts are set forth sufficiently in the opinion.

*Samuel Hand* for the appellant. It was not necessary to the validity of the contract that it should be authorized by an ordinance of the common council. (1 Laws 1870, 384; 2 Laws 1866, 1193, chap. 551; Laws 1865, 717; *Green* v. *Mayor*, Ct. Apps., March, 1875 ;* *People* v. *Van Nort*, 64 Barb., 205; *In re Eager*, 12 Abb. Pr. [N. S.], 151.) The

* 60 N. Y., 363.

provision of section 101 of the charter of 1870 has no application to the matter of contracts made under the statutes relating to sewerage passed 1865 and 1866. (1 Laws 1870, 314, 316, 366, 384, 390; 1 Laws 1857, 884, § 28; *Baldwin* v. *City of Oswego,* 2 Keyes, 132; 1 Abb. Ct. App. Dec., 62.) If there was a necessity for a previous appropriation, the appropriation was made. (Laws 1865, 716; Laws 1866, 1193; 2 Laws 1872, 1414, § 4; *Ditwiller* v. *Mayor,* 1 T. & C., 657, 660; *Wetmore* v. *Campbell,* 2 Sandf., 341; *Manice* v. *Mayor,* 8 N. Y., 120; *Laimbeer* v. *Mayor,* 4 Sandf., 109; *Waddell* v. *Mayor,* 8 Barb., 95.) It was no objection to the validity of plaintiff's claim that by the act of 1866 the comptroller was to issue but $100,000 of bonds to pay it. (*Mallory* v. *Ins. Co.,* 47 N. Y., 52; *Castle* v. *Duryea,* 32 Barb., 480; *Abernethy* v. *Church of Puritan,* 3 Daly, 1; *Benssi* v. *Wood,* 37 N. Y., 532.) Defendant, having used plaintiff's property for a purpose within the general powers of the corporation, is estopped from denying its liability to him. (*Peterson* v. *Mayor,* 17 N. Y., 449; *People* v. *Flagg,* id., 584; *Messenger* v. *Buffalo,* 21 id., 196; *Hanson* v. *Dexter,* 36 Me., 516; *San Fran. Gas. Co.* v. *City of San Francisco,* 9 Cal., 453.)

*D. J. Dean* for the respondent. The commissioner of public works had no authority to make the contract proved. (2 Laws 1866, 1193, chap. 551, §§ 9, 10.) The act of the commissioner in making the contract was *ultra vires,* and cannot be the basis of liability against defendant. (*Hodges* v. *Buffalo,* 2 Den., 110; *Donovan* v. *Mayor,* 33 N. Y., 293; *McDonald* v. *Mayor,* 4 S. C. R., 177; *Brady* v. *Mayor,* 2 Bosw., 173; 20 N. Y., 512; *Smith* v. *Mayor,* 10 id., 508; *Suprs.* v. *Bates,* 17 id., 242.)

RAPALLO, J. This action is brought to recover the sum of $54,550.60, and interest for a balance claimed by the plaintiff to be due to him upon a contract for furnishing sewer drain, pipes and invert blocks. The contract was made on the 29th of April, 1871, between the plaintiff and the defend-

ant, acting through the commissioner of public works. The whole amount payable, according to the contract, was $181,835.40, of which the defendant has paid $127,284.80, leaving unpaid the balance claimed.

It is undisputed that the materials were delivered pursuant to the contract, and accepted by the proper officials, and that the necessary certificates were given to entitle the plaintiff to payment. No breach of the contract on his part is set up, nor is any fraud alleged ; and it was admitted on the trial that the materials mentioned in the contract and complaint were intended to be used and were actually used by the defendant as materials in the construction of sewers. Two points only were raised on the part of the defence, viz.:

First. That there was no ordinance of the common council authorizing the contract, or other proof that the defendant ever authorized the commissioner of public works to make a contract.

Second. That it was not shown that any appropriation had been previously made, covering the expenses contemplated by the contract.

Upon these two grounds alone the court, at the trial, dismissed the complaint.

The first ground of nonsuit is, we think, disposed of by the decision of this court in the case of *Green* v. *The Mayor, etc.* The act of 1865 (chap. 381), as amended by the act of 1866 (chap. 551), conferred directly upon the Croton aqueduct board the power to " contract, in pursuance of law, for such materials used in the construction of sewers, and in such quantities as they might deem proper." The whole power and discretion in the matter of purchasing these supplies was vested in that board, and no action of the common council was required. The expression, " *contract in pursuance of law*," does not refer to any action of the common council, but to the manner of making the contract. By section 5 of the act of 1865 (and in this respect the present case differs from that of *Green* v. *The Mayor, etc.*), the board was required, before

* 60 N.Y., 303.

contracting for the construction of sewers, to cause specifications to be made of the work proposed to be done, and to invite proposals in the manner there required by law. When the section was added, in 1866, authorizing the board to contract for materials, this provision was applied to the new power given, by the brief expression, "contract in pursuance of law." But the power to make the contract was given exclusively to the Croton aqueduct board, and was, by the charter of 1870, transferred to the commissioner of public works.

The second ground of nonsuit, however, presents a question of greater difficulty. By the charter which was in force at the time of the passage of the act of 1866 (Laws of 1857, chap. 446, § 28), it was provided that no expense should be incurred by any of the departments or officers thereof, whether the object of expenditure should have been ordered by the common council or not, unless an appropriation should have been previously made covering such expense. The act of 1865 (chap. 381), empowers the Croton aqueduct board to frame a plan of sewerage for the whole city, and for that purpose to employ engineers, surveyors, inspectors, and other persons, and to take and acquire lands, and to invite proposals for the work to be done, and contract therefor. It then provides that the expenses incurred by the board in pursuance of that act, including the cost of land, shall be assessed upon the property benefited by the improvement. But the board are authorized to insert, in each contract made by them, a provision that payments, by monthly installments of seventy per cent of the amount of work done, will be made during the progress of the work, the remainder to be retained until the confirmation of the assessment. The comptroller is required, on the requisition of the board, to pay all the expenses incurred by it under the act, from the proceeds of assessment bonds to be issued in accordance with existing laws.

The amendment of 1866 (chap. 551) consists simply of the addition to the act of 1865 of three sections, numbered nine,

ten and eleven. None of the provisions of the act of 1865 are abrogated or changed. Section 9, thus added, provides that, for the more effectual and economical construction of the sewers authorized to be constructed, the Croton aqueduct board may contract, in pursuance of law, for such materials used in the construction of sewers and in such quantities as they may deem proper, and that it shall be lawful for the comptroller to pay, on the requisition of said board, from the proceeds of the bonds thereinafter authorized to be issued, for such materials, and the expenses for engineers, surveyors, inspectors or other persons employed by their authority in the construction of sewers as authorized by the act of 1865.

Section 10 provides that for the purpose of making such payments the comptroller may issue assessment bonds in addition to those authorized by existing laws, not to exceed $100,000.

Section 11 requires the board, upon the completion of any sewer, to certify to the assessors the quantity of materials used and the price thereof, and the charges for engineers, surveyors, inspectors or other persons, which have been paid by virtue of section 9, for each sewer, in order that the expenses for said materials and labor may be apportioned, together with the other expenses of construction, on the property benefited by the improvement, the bonds to be redeemed from the assessments collected.

The first question which presents itself is, whether it was the intention of the act of 1866 to limit the expenditure for materials, engineers, surveyors, inspectors or other persons employed by the board in the construction of sewers, to the sum of $100,000 to be raised by the revenue bonds specially authorized. If such was the intention of the act, there was no authority given to the board to incur any liability on the part of the city beyond that amount for the purposes specified. That would be the extent of the appropriation for those purposes, and the provisions of the charters of 1857 and 1870 and the amendments of 1871 positively prohibit any such appropriation being exceeded.

By the act of 1865 all expenses incurred by the Croton aqueduct board in the construction of sewers were to be paid ultimately by assessment on the property benefited and, in the first instance, by the issue of assessment bonds, according to existing laws. There was no limit to the amount of assessment bonds which might be issued. For expenses incurred under that act, and assessable upon the property benefited, it was not necessary that any further appropriation should be made. The means of payment of all such expenses were fully provided for. But the expenses authorized by the amendments of 1866 seem to have been regarded by the legislature as not being of such a character that assessment bonds could be issued therefor under existing laws, for, by the act of 1866, the comptroller is authorized, for the purpose of meeting those expenses, to issue assessment bonds in addition to those authorized by existing laws not to exceed $100,000, and his authority to make payments for the materials and labor is restricted to payments out of the proceeds of such additional bonds. He is not authorized to resort to any other fund, and no other fund is provided out of which the payments can be made.

It is claimed, however, that by section 11, added by the amendment of 1866, the cost of the materials and labor may be assessed upon the property benefited, and, consequently, no specific appropriation was required. But it does not clearly appear that all such expenses would be thus assessed. The language of section 11 is peculiar. It does not provide for the assessment on property of all the expenses which may be incurred, but only of such of them as have been paid by virtue of section 9; that is to say, from the proceeds of the bonds thereby specially authorized. On the completion of each sewer, the Croton aqueduct board is required to certify to the assessors the quantity of materials and the price thereof, and the charges for engineers, etc., *which have been paid by virtue of section* 9 for each sewer. The only authority to pay contained in section 9 was to pay from the proceeds of the special issue of bonds, thus showing that it was

not contemplated that the expenses in question should be paid out of any other fund, or that they should exceed the amount provided.

It is also obvious that materials might be purchased under the authority contained in the act of 1866, which would never be used in the construction of any sewer. The object of the act appears to have been to enable the city to lay in a stock of suitable material, to be used from time to time in the construction of such sewers as might be ordered. The case is the same as if the city had been authorized to lay in a stock of paving stones, flagging, Croton water pipes, or other articles, for future use. The articles, when purchased, would become the property of the city, and although, if used, the city would ultimately be reimbursed by assessments, yet it might take years to consume the stock laid in, and some of it might never be used. The drains, pipes, etc., purchased under the present contract might have been rendered valueless by being superseded by new and improved manufactures, or they might have been lost or destroyed.

It was not certain, therefore, that all the articles purchased would be paid for by assessments. In the mean time, a debt on the part of the city was to be created, and it seems to us that, taking into consideration the provisions of the act of 1866, restricting the issue of bonds to $100,000, and requiring the payments to be made out of the proceeds of such bonds, in connection with the then existing provision of the charter of 1857, that no expense should be incurred unless an appropriation covering it should have been previously made, the authority to issue the bonds and apply the proceeds to the payment of these expenses was regarded as an appropriation, and it was the intention of the legislature to restrict the amount of indebtedness to be incurred by the city to the amount thus appropriated; and that even if the contract had been made before the adoption of the charter of 1870 and the amendment of 1871, we should be obliged to hold that it was subject to the objection that it purported to create an indebtedness larger than was authorized by law.

The charter of 1870 (Laws of 1870, p. 390, § 101) re-enacts the provision of the charter of 1857, that no expense shall be incurred by any of the departments or officers thereof, whether the object of the expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made covering such expense. This provision was repeated in the amendments of 1871. (Laws of 1871, p. 1246.) And the power of making appropriations for the expenses of the various boards and departments was vested in certain city officers, and the amounts thus appropriated were authorized to be raised by tax upon the real and personal property subject to taxation within the city and county of New York. This amendment took effect on the 18th of April, 1871, more than ten days before the contract now in controversy was made. Therefore, at the time of the making of such contract the provision was in force prohibiting all the departments from incurring any expense for which an appropriation should not have been previously made.

It is not necessary to consider whether the amendment of 1871 superseded the existing appropriation of $100,000 made by the act of 1866, and required that a new appropriation be made by the city officers under the act of 1871. Assuming that the appropriation made by the act of 1866 continued in force, yet the contract being for $181,000 and upward, it is obvious that it was in excess of the appropriation, and therefore prohibited. If held valid to the extent of $100,000, yet, more than that amount having been paid by the defendant, there could be no recovery on the contract for the excess. (*Donovan* v. *The Mayor, etc.*, 33 N. Y., 291.)

It is claimed on the part of the plaintiff that the nonsuit should not be sustained on the ground of the limitation of the amount of the bonds to $100,000, because it was not shown or alleged that the funds thus provided had been exhausted, and if such allegation had been made it could have been shown that the $127,000 already paid had been paid from money received from assessments, and no bonds had in fact been issued.

. The difficulty in the way of this argument is, that if when the contract was made there was no previous appropriation covering the expense, it fell within the prohibition and was illegal and void, at all events to the extent of the excess over the amount of the appropriation. This illegality could not be cured by subsequent acts of the defendant not done under legislative authority. If the contract was void when made because prohibited by law, it did not become valid by reason of the amount due upon it being reduced by payments from other sources to the amount of the appropriation. ·

It does not follow, however, that though the contract be void the plaintiff would be entirely without remedy. If, as is alleged, the city has obtained his property without authority, but has used it and received the avails of it, it would seem that, independently of the express contract, an implied obligation would arise to make compensation. In the case of *Argenti* v. *San Francisco* (16 Cal., 255, cited in Dillon on Municipal Corporations, § 384), it is said by FIELD, Ch. J., that "the doctrine of implied municipal liability applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake or. without authority of law, it is her duty to refund it, not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it, or if used by her to render an equivalent to the true owner." (See, also, cases cited in Dillon on Municipal Corporations, § 750.) It has often been adjudged that if a city obtains money on a void bond, or for an illegal tax, or by mistake, and the money goes into the city treasury, the city can be compelled to refund. If it obtains property under a void contract and actually uses the property and collects the value of it from property owners by means of assessments, the plainest principles of justice require that it

should make compensation for the value of such property to the person from whom it was obtained. The city in such a case, however, should be held liable only for the actual value of the property, or what it obtained therefor, and would not be concluded by the contract-price.

But there is a view of this case which renders it unnecessary to pursue the question of implied liability, notwithstanding that when the contract was made it was invalid for the reason that an expense was thereby incurred in excess of the amount appropriated to cover such expense, yet it was clearly within the power of the legislature subsequently to validate the contract by providing for the payment of the expense thereby incurred; and it is claimed, on the part of the plaintiff, that this has been done by the act of 1872. (Chap. 872, § 8.) That section provides, that in addition to the amounts authorized by existing laws, the comptroller is required to issue assessment bonds to the amount of $100,000 annually, the amount realized therefrom to be applied to the payment of "the expenses incurred in the construction of sewers already built or to be built," and to provide the means to reimburse the city treasury for the advances made under the acts of 1865 and 1866.

The object of this section seems to be to supply the defect arising from the insufficiency of the previous appropriation to cover the expenses incurred under the acts of 1865 and 1866. The specific reference to those acts shows that they were present to the mind of the legislature; and the expression "expenses *incurred* in the construction of sewers to be built" refers to the class of expenses provided for by the act of 1866, and shows that it was intended to supplement the appropriation thereby made to cover those expenses. The eighth section of the act of 1872 could have had no other object. No necessity for such an enactment existed for any other purpose. All the expenses to be incurred under the act of 1865, in constructing sewers, were provided for by that act. The only limitation or restriction as to amount was contained in the act of 1866, which restricted the amount of

bonds to be issued to $100,000. The commissioner of public works had incurred expenses under that act to a larger amount. The liability incurred to the plaintiff alone was upwards of $181,000, for materials which it is admitted were intended to be used in the construction of sewers. The legislature must be deemed to have acted with reference to what had been done by the department of public works under the act of 1866. In the light of all these facts, the intention of the act of 1872 (§ 8) is clearly apparent. It was to enlarge the appropriation of $100,000, contained in the act of 1866, to $100,000 annually, and to cover the expenses in excess of $100,000 which had been incurred by the commissioner of public works under that act. I can find no other effect which section 8 of the act of 1872 can have; the legislature clearly recognized and sanctioned these excessive expenditures by providing for their payment.

Before the commencement of this action, the amount of bonds which the comptroller was authorized to issue for the purpose of meeting these expenditures, had reached at least $300,000 — a sum much more than sufficient to pay the claim of the plaintiff. The city admits that it has received and used the materials furnished by him. The legislature has provided the means of payment, and by so doing has taken the case out of the general provision requiring a previous appropriation; and, unless some substantial defence can be shown to the claim, we see no reason why it should not be paid, in accordance with the intention of the legislature.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur; FOLGER and MILLER, JJ., not sitting.

Judgment reversed.