WILLIAM NELSON, Appellant, *v.* THE MAYOR, etc., of the CITY OF NEW YORK, Respondent.

*N. Y. Supreme Court, First Department, General Term, May, 24, 1889.*

1. *Municipal corporations. Public improvements.*—A contract for material to be furnished to the city, where the price to be paid therefor exceeds the sum of $1000, is required under section 104 of chap. 137, Laws of 1870, to be in writing, under such regulations as are established by ordinance of the common council, unless by a vote of three fourths of the members elected to such board, it should be ordered otherwise.

2. *Same. Contract. Fraud.*—Where parties join together to evade and disregard the obligations and duties of public officers and the plain mandate of statutory provisions, the contract resulting from their acts and combination is not only fraudulent, but unlawful, and upon it no action can be maintained for indemnity by either of the parties.

3. *Evidence. Memoranda.*—Books of account, or memoranda concerning transactions which have been forgotten, but which can be sustained as having been truthfully made, when offered in evidence, are to be received and submitted to the jury for their consideration, so far as they may be applicable to the subject in controversy.

4. *Same.*—Such books are not rendered inadmissible in evidence by the fact that they belonged to plaintiff's clerk, where they have been kept in the course of the discharge of his duties in the plaintiff's business; they are entitled to be regarded as the latter's books, so far as they record the transactions which took place in the course of his business with the city. Nor are they rendered incompetent because they contain the entry of other matters.

5. *Same. Statements.*—Statements made by plaintiff's book-keeper from such books, showing the difference between the amounts and charges for articles delivered by plaintiff to the city, and cards stating the advertised selling prices of plaintiff for articles included in the contract, are competent to show the unlawful character of the contract between plaintiff and the city.

6. *Award. Evidence.*—An award of the board of apportionment and audit to be legal and effectual, must be made by the concurrent vote of, and signed by, all the members of the board, and the certificate of the clerk of such board that the amount was audited

and allowed by the concurrent vote of all the members of the board, when the award is signed by only two of them, does not render it admissible in evidence.

7. *Same.*—To make the award, if legally executed, effectual in any manner, proof must be given directly connecting it with the subject in controversy in the action.

8. *Evidence. Improper. Without objection.*—The court should, in the submission of the case to the jury, direct them to disregard improper evidence, which is received during the progress of the trial, though without objection.

9. *Order for new trial. Form.*—An order denying a motion made upon the minutes for a new trial, which does not disclose the fact that the application for a new trial proceeded upon any specified ground, does not bring up any question for review.

Appeal from a judgment entered on a verdict, and from an order denying a motion for a new trial on the minutes.

*John H. Strahan,* for appellant.

*D. J. Dean,* for respondent.

DANIELS, J.—By the complaint in the action, it is stated to have been brought to recover the sum of $54,550.60, with interest from the 12th of December, 1872, upon a contract made with the plaintiff for vitrified, salt-glazed stone-ware drain and sewer pipes and invert blocks. It is alleged that the plaintiff, under the contract, at divers times, between the 29th of April, 1871, and the 30th of October, 1872, furnished and delivered to the defendant pipes, curves and branches, which at the contract prices amounted to the sum of $181,835.40, and that the plaintiff had been paid no account of the contract, $127,284.80.

The right of the plaintiff to recover upon the contract was resisted upon two grounds, the first being that the contract had not been entered into as that was required to be done to render it binding upon the defendant, under the laws applicable to the city of New York, and the second defense consisted of the charges that the contract was not let to the lowest bidder, but that the plaintiff's bid for the

materials exceeded that of Thomas R. McMann in the sum of more than $70,000, and that the contract was entered into in this manner by collusion and fraud between the plaintiff and the officers through whose intervention, on the part of the city, it was made and executed.    The contract was made on the 29th of April, 1871, and was subscribed by William M. Tweed for the Mayor, etc., of the city, and by the plaintiff for himself.

Upon the first trial of the action, the complaint was dismissed upon the ground that the contract itself was unauthorized, and this dismissal was sustained on appeal to the general term.    Nelson *v.* The Mayor, 5 Hun, 190.    But on a further appeal to the court of appeals, the judgment was reversed, and it was held that the contract in the form in which it had been made was authorized by law.    Nelson *v.* The Mayor, 63 N. Y. 535.

It is urged on behalf of the city that this last decision arose out of a misapprehension concerning the state of the law applicable to the contract.    But whether the reversal proceeded in that manner or not is not now a matter or subject of inquiry ; for the case has been tried upon the theory that the contract in its form did not violate the laws of the state applicable to the city, and under which it was made.

The last trial proceeded upon the second ground of defense most prominently set forth in the answer of the defendant, and that consisted of the allegation and charge that the contract was not let to the lowest bidder, as the law required it should be, but that it was a collusive and fraudulent agreement entered into in such a manner as to secure to the plaintiff a larger price for the articles designed to be delivered and received than their selling prices, and larger than the other bid under which the same material was proposed to be furnished to the city.    To secure this result, the evidence tended to prove the fact to be that the plaintiff, by his proposals, offered to furnish and deliver to the city the articles, of which small amounts, or no amounts

whatever, might be required, at prices less than their market value; and that he proposed to furnish and deliver to the city other articles, of which large quantities were expected to be delivered and received, for prices greatly exceeding the market or selling prices of these articles, and that these features of the proposals were understood by the officers acting on behalf of the city, and the contract was intentionally made by them with the plaintiff in this form, in violation of the statute requiring that it should be awarded to the lowest bidder, and to impose upon the city the expenditure of a large sum of money, exceeding that for which the same articles could be, and should be, obtained under the other bid.

Before this contract was awarded, or any advertisement was published for proposals, the charter of 1870, consisting of chapter 137 of the Laws of 1870, had been enacted, and has substantially in the same form, been continued and preserved in force from that time to the present. By section 104 of this act, as the price to be paid for the material exceeded the sum of $1,000, the contract for it was required to be in writing, under such regulations as were established by ordinance of the common council, unless by a vote of three fourths of the members elected to such board, it should be ordered otherwise.

There is no pretense that any such vote was ever taken, and the contract by this act was necessarily, therefore, to be in writing. The act further provided that, "all such contracts when given, shall be given to the lowest bidder, the terms of whose contract shall be settled by the counsel to the corporation, as an act of preliminary specifications, to the bid, or proposal." It was the plain duty and obligation, therefore, of the officials representing the city under this act, to obtain the materials intended to be purchased of the plaintiff, at the lowest price, or bid, that should be presented for them, pursuant to the advertisement for the proposals. No more than ordinary fidelity and honesty

were in this respect exacted from these persons, and if they failed to discharge that duty, and intentionally let the contract to the plaintiff upon a bid made by him in such a form as to evade the obligation of the statute, and to subject the city to the payment of a larger price for the articles, than that for which they could otherwise be obtained, and confederating with them, presented distributive proposals for the articles, intending to carry this unlawful design into effect, and by the ingenious arrangement of his bid to prevent the contract from being let to the other person, who in fact was the lowest bidder, then it was void, and the plaintiff was neither entitled to recover upon the agreement itself for any balance nominally remaining unpaid to him, nor for the value of the articles themselves, according to their fair and honest market price.

Where parties in this manner join together to evade and disregard the obligations and duties of public officers and the plain mandate of statuory provisions, the contract resulting from their acts and combination is not only fraudulent, but it is unlawful, and upon such an unlawful agreement no action can be maintained for indemnity by either of the parties. The common law has at all times been just in its aversion and condemnation of these agreements; and where parties enter into them, they are not permitted to appeal to courts of justice for protection or redress. This subject was considered in People *v.* Stephens (71 N. Y. 527), which is an authority the plaintiff has relied upon to support this action.

There the law was stated to be that, " it is an elementary principle that an action will not lie upon a contract tainted with fraud, at the suit of him by whose fraud the contract is induced." Id. 558.

But the principle more directly applicable to the disposition of this case is still more far reaching than the one mentioned in this opinion of the court. For it includes not only the fraud of the plaintiff and the officials concerned in mak-

ing or bringing about this agreement, but beyond that a violation of a positive statutory provision. And this fact also distinguishes this case from that of Baird *v.* The Mayor (96 N. Y. 598), in which it was not contended that the contract itself had been entered into in violation of this statutory provision.

This legal principle was in another form considered by the court in McDonald *v.* The Mayor, etc. (68 N. Y. 23). There the court, in the course of its opinion, enunciated this general principle, and in support of it, used this language :

" Here there is an express legislative inhibition upon the city that it may not incur liability unless by writing and by record. How can it be said that a municipality is liable upon an implied promise when the very statute which continues its corporate life and gives it its powers and prescribes the mode of the exercise of them, says that it shall not, and hence cannot become liable, save by express promise. * * * As we have already said  * * * if the charter imposes restrictions upon the manner of contracting, they must be observed." Id. 28.

This charter positively required that the contract for these materials should be let to the lowest bidder, whose bid should be made after an advertisement for proposals. This defense is that it was not so let, but that by the fradulent and criminal confederation of the commissioner of public works, and of the plaintiff, it was intentionally let in such a manner as to accept the highest, instead of the lowest, bid for the material. And if that was the nature of the contract, it was entirely void. Proof was offered on the trial, and in the main directed, to the establishment of the fact that this was the nature of the agreement upon which the plaintiff's action proceeded. And as a part of this proof, an early estimate made in his favor was relied upon by the defendant upon the trial. This estimate was produced by the plaintiff, and was made upon articles claimed to have

been delivered after the contract was entered into and prior to the 7th of July, 1871. The estimate stated the articles delivered amounted at the contract price to the sum of $31,870.72, of which thirty per cent. was to be reserved by the city under the terms of the agreement, until its final performance and completion. This left a balance of $22,309.51 payable to the plaintiff on the face of this estimate, and that amount was in fact paid to him on the 7th of July, 1871.

The defendant made proof tending directly to establish the fact to be, that no greater or larger amount of articles mentioned in this estimate, had been delivered to the city by the plaintiff, at the time that it was made, than amounted to the sum at the contract price of $10,534.58. This balance the evidence tended to prove, the plaintiff obtained from the city, without right upon this estimate, being near $12,000 more than double the prices of all the articles which he had, in fact, delivered of the description contained in this estimate. And that was a circumstance, if the estimate was, in this manner, so overstated, as directly to indicate a state of fraudulent and unlawful dealings between himself and the department of public works. To prove the fact, as it was alleged to be in this respect, it was shown by the evidence of the witnesses, Wamsley and Cunningham, that they were in the employment of the plaintiff during the time included in this estimate, and that it was their duty to keep an account of the articles which were sent from the plaintiff's yard, or place of business, in this city, to the defendant, under and pursuant to the agreement. And for that purpose, according to their evidence, books of account were kept, in which they made entries of these articles. The entries were chiefly made by Cunningham, and only by Wamsley in the absence of the former. The books were produced, in which these entries were made, and they are testified to have been kept in this manner, and to have included all the articles delivered by the plaintiff to the

city, prior to the 7th of July, 1871. Entries were made in one of the books by another person, but those entries did not relate to this business. They were chiefly, if not entirely, made by the witness, Cunningham. For while Wamsley stated that one of the books contained entries by himself on the twenty-seventh of May, the seventh, eighth and tenth of June, they do not distinctly appear to include articles delivered to the city under the agreement. But if they did, as the books were received in evidence, the plaintiff had all the benefit from this source which he was at liberty to claim.

After the books were verified by these witnesses, and the entries were stated to have been correctly made, and the course of business to which they related was described, the defendant offered the books in evidence. They were specifically objected to by the plaintiff's counsel, upon the ground that they were not the books of the plaintiff, one of the witnesses having stated that the books belonged to himself; second, because the books contained entries of other matters besides the delivery to the city; third, that the evidence is immaterial, inasmuch as the defendant's counsel had already admitted the delivery by the plaintiff of all the pipes for which he claimed to recover. The objections were overruled, and the books were received in evidence, so far as they were offered as such, and that included no more than from December, 1870, to July 8, 1871, containing all the entries relating to deliveries under this agreement.

That one of these witnesses stated that the books belonged to him did not render them inadmissible as evidence, for they had been kept in the course of the discharge of the duties of these witnesses in the business of the plaintiff, and were entitled to be regarded as his books, so far as they recorded the transactions which took place in the course of his business with the city. And that they were admissible, so far as they were offered, was in no manner dependent upon the circumstance that other entries were inserted in

the books besides those recording the delivery of property
under the agreement to the city.    Those other entries were
not a part of the proof, designed to be and which was,
presented by the books.    But the books were offered and
received to prove what articles and what quantities had
been delivered by way of performance of this agreement,
from the time when it was made to the time when this esti-
mate was presented and accepted, and the payment already
mentioned was made, on account of it, to the plaintiff.    And
if the plaintiff had finally delivered all the articles which
he was bound to deliver by the contract, that would in no
manner justify the court in excluding these books.    They
were well authenticated by the evidence of these witnesses,
which tended very directly to establish the truth to be, that
all the articles delivered, by way of performance of this con-
tract, prior to the 7th of July, 1871, had been correctly
recorded in the books.    The witnesses were incapable of
recollecting, as they testified, the articles or quantities
which had been delivered, and the books had been kept, in
the plaintiff's business, as books are kept in other detailed
transactions of business, truthfully to record them, because
of the inability of the human memory to retain and after-
wards account for the dealings that have taken place.    And
when books of account, or memoranda concerning trans-
actions which have been forgotten, but which can be sus-
tained as having been truthfully made, are offered in evi-
dence, the settled rule is to require the courts to receive
them, and they are to be submitted to the jury for their
consideration, so far as they may be applicable to the sub-
ject in controversy.    Krom *v.* Levy, 1 Hun, 171 ; Ocean Natl.
Bank *v.* Carll, 55 N. Y. 440 ; McGoldrick *v.* Traphagen, 88
id. 334.    Conformable to the principle settled by these and
other authorities, the books were rightly received in evi-
dence, and there is little, if any, room for supposing that
they failed to record truthfully all the deliveries made by
the plaintiff to the city, pursuant to this contract, during
his period of time.

They were further authenticated as to their correctness by the testimony showing the manner in which the articles were sent away with the cart-man and the vouchers returned, and by the returns which were made to the plaintiff himself when he visited the yard. If there had been the slightest inaccuracy in the record of these deliveries, the plaintiff may be assumed to have had the means of showing it. But he failed to do that, or in any manner whatever to impeach the correctness of these accounts. And no injustice was done to him at the trial, in the view which the jury appears probably to have adopted, that these books correctly stated all the articles which had been delivered by way of performance of this contract up to the time when this estimate was made, and the sum of $22,309.51 was paid to him upon it.

Mr. Cunningham further testified that he made out a statement, which was referred to on the trial as exhibit 19, showing the difference between the amounts and charges for articles delivered, as they appeared by, and were taken from, these books. He showed by his testimony the manner in which this statement had been made, and he was finally asked the question: " Does that statement contain all the entries in these books of deliveries to the corporation from April 29, 1871, to July 7, 1871 ? " His answer was: " Yes, sir." The defendant's counsel then offered this statement in evidence, and it was objected to as irrelevant, incompetent and immaterial, and to the ruling, allowing it to be received as evidence, the plaintiff's counsel excepted. This statement, as it was proved and authenticated by the witness, contained all the articles which had been recorded in the books as delivered, while he was in the employment of the plaintiff up to the time when the first estimate was made and allowed, and he testified that they were all in his handwriting, and it tended directly to prove that in the estimate charging the articles at the sum of $31,870.72, an overcharge of more than two-thirds had been

made. Another statement marked as exhibit No. 20 was shown to contain not only the pipes, and sizes mentioned in exhibit 19, but also such other sizes of pipe as between the same dates had been put into the corporation yards by Mr. Nelson. And evidence had been given proving that pipes were put into the corporation yard by the plaintiff as a place of deposit, and not by way of performance of the terms of the agreement.

This statement, the witness added, was prepared the same as the other, and it was offered in evidence and objected to on the same grounds. It was received and an exception taken by the defendant to the decision allowing it to be read. This statement was not specially important in the case, as long as the preceding one had included precisely what appeared to have taken place under the agreement itself. But it did tend, in a measure, to corroborate the accuracy of the preceding statement, showing that all the sewer pipes delivered from the making of the contract to the 7th of July, either by way of depositing them in the corporation yards, or under the agreement, amounted to no more than the aggregate sum of $14,102.48. It had a direct tendency to preclude the possibility of the truth of the statements contained in the first estimate made and allowed to the plaintiff. And for that object at least it was regularly received in evidence. A further statement, including all the pipe which had been delivered or deposited by the plaintiff between the 1st of December, 1870, and the 7th of July, 1871, was also received under the like objections. And this statement included a period of more than four months prior to the time of the making of the agreement, and contained the pipe delivered under the contract as well as that deposited for the plaintiff's convenience in the corporation yard, which, in the aggregate, amounted to no more than $29,891.98.

The testimony supplied by these statements was material in the case, for it disclosed to the jury a clearer idea of the

transactions under the contract than they could have obtained from the books themselves, or, in the absence of the explanation in this manner made, from the witness.

The cross-examination of this witness had been relied upon as tending to impeach the truth of the books and of the statements themselves. But the evidence given by him was that the pipes not included in the statements had not been delivered under the agreement. Pipes were put into two other yards, but they were not shown to include any pipes delivered in fulfillment of the contract, and not contained in the books and the statements.

The same remark is correct as to manner in which the witness testified he had made the statements, the first certainly being from entries recorded in the books by himself. That statement was not shown on this account to have been imperfect, or incorrect, in the least degree. What he said was entirely consistent with his own preceding testimony, that all had been put down which was found in the books and related to the pipes delivered by the plaintiff under this agreement. The inventory of pipes shown to have been taken at the yard, and the receipt for pipes in the Rivington street yard, signed by Baker, in no manner changed the effect of the evidence of this witness. It still remained as it was received in the case, a subject which it was the duty of the court to submit, as proof tending to sustain the defense, to the jury.

To further exhibit the unlawful character of this contract, cards were produced and given in evidence stating the advertised selling prices of the plaintiff for descriptions of pipe included in the contract. They were also within the prices contained in the plaintiff's proposal, and in the agreement as it was finally made. And from these lower prices it was stated that discounts were made by the plaintiff in the sales made of quantities of pipe. This evidence tended to exhibit a very material difference between the

plaintiff's selling prices and those which found their way into his proposals and into the contract, and to confirm the position taken, by the defense, that both the proposals and the contract were designed to provide for the purchase of the pipes at a higher than their market price, and to defraud the city out of more money than the amount claimed by the plaintiff as the balance remaining unpaid to him. As the plaintiff's proposals were made, he appeared upon the figures to offer the pipe supplied under the contract at the sum of $55,454.50 less than McMann had proposed to supply them for in the prices given by him. His prices seem to have been graded according to the market prices of the articles to be delivered, without varying them in the manner in which the plaintiff did, by offering low prices for articles which probably would not be required and high prices for those which it might reasonably be expected might, from the bulk of the contract.

In this way he was apparently the lowest bidder by this sum of money, yet when the contract came to be performed, the pipes delivered by him seem to have amounted in price to the sum of $70,947.03 above the bid or proposals of McMann.

This was proved by the calculations and prices mentioned in the course of the evidence, and this excess deduced by the witness Burrows, who was an accountant, and had examined these articles and these prices with great detail.

That the city required a larger quantity of what were called inverts, than was contained in the proposals and contract of Nelson, appeared by avertisements made for other work, during the same time that the advertisements for the proposals sent in by the plaintiff, were published. And contracts were allowed to be given in evidence establishing these facts, and in that manner tending to maintain the conclusion that the official authority under which the contract with the plaintiff was made, and the proposals had been received, was confederated with the plaintiff in the

success of the contrivance for cheating and defrauding the city. Upon this part of the case the evidence was ample for the action taken by the jury, and it was materially strengthened by the fact that no substantial testimony was produced on the part of the plaintiff tending to overthrow this theory.

After the proof was through on the part of the defendant, the plaintiff put in evidence a certificate of the clerk of the board of apportionment and audit created by chapter 9 of the Laws of 1872, and also an award of two members of that board. This award is stated to be for " vitrified stone-ware, drain and sewer pipe furnished to the department of public works, bureau of sewers, for the purposes of the city of New York for the year 1871, and the award as it was made, allowed the plaintiff $55,327.69. This award on its face has neither the sanction or support of this act, nor of the amendatory chapter 29 of the same laws. For by section 2 of chapter 9, to render the award legal and effectual, the concurrent vote of all the members of the board has been required, while in this instance it was signed by but two out of three members of the board.

The clerk of the board has, it is true, certified that the amount was audited and allowed by the concurrent vote of all the members of the board. But neither of these statutes confer upon him the power or authority to make this certificate. His duties as they were prescribed in the law, were distinct and clear, and vested him with no power to certify in the manner in which he appears to have done by the certificate which was read, and it accordingly was not evidence in the case. Code of Civ. Pro., § 922; Board, etc., v. Lansing, 45 N. Y. 19.

And for these reasons the court was right in the charge which was given to the jury, directing them to give no weight or importance to the award or audit, which was read in evidence. For where improper evidence is received during the progress of a trial, even without objection as this

was, it is still the duty of the court in the submission of the case to the jury to direct them to disregard it. Hamilton *v.* N. Y. C. R. R. Co., 51 N. Y. 100.

A further objection to the effect of the audit or award as evidence arose out of the fact that it does not appear to have been made upon accounts for articles furnished or delivered under this contract. The award states that it was for stone-ware, drain and sewer pipe delivered in the year 1871, while the estimates proved upon the trial exhibit the fact to be that the plaintiff had been paid for all such pipes in the year 1871, or the early part of the year 1872, less the thirty per cent. reserved for the final payment under the contract. And this thirty per cent for 1871, allowing as a part of it the excessive amount stated in the first estimate, shown to have remained unpaid, did not exceed in all, the sum of $40,000, while the award of the two commissioners under the law of 1872 was for $55,327.69, and that as a matter of fact was paid over to the plaintiff according to his receipt, on the 21st of June, 1872. It is manifest, therefore, that the account presented to the board of apportionment must have been for other and different sewer pipe than those mentioned in this contract, and stated in the estimates of 1871, upon which this balance of thirty per cent. is alleged to have been retained and continued unpaid. For this, as well as other reasons, the court was right in directing the jury to attribute no importance whatever to the certificate of audit produced and read in evidence on the part of the plaintiff. To make it effectual in any manner, proof should have been given by the plaintiff, directly connecting it with the subject in controversy in the action. That proof was not furnished, but as far as the proof went, it tended to support the inference that the certificate made by these two members of the board of audit was for another and different subject from that forming the cause of action in this suit. This is the only exception which was taken to the charge, and as it is without foundation, it can be, of course, of no benefit to the plaintiff in the action.

Other exceptions were taken in the course of the trial, but neither seems to have the support of any substantial merit. For they still have less to rest upon than the exceptions which have already been particularly examined, and do not deserve any further attention for their disposition.

On the appeal from the order denying the motion made upon the minutes for a new trial, it has been insisted that the verdict was against the evidence, and that the jury were misdirected by the court, and that injustice was produced by the result to the plaintiff. But neither of these objections can be relied upon in support of this appeal for the reason that the order does not disclose the fact that the application for a new trial proceeded upon either of them, or any specified ground. It is in the most general form in which the order could be made, stating no more than that a motion for a new trial upon the minutes had been heard, and on motion of the counsel for the defendant it was "ordered that the said motion is hereby denied." This order accordingly, under the practice, brings up no question for review. Joannes *v.* Jennings, 4 Hun, 66; Pharos *v.* Gere, 107 N. Y. 231.

There is, however, no ground to support the objection that injustice was done by the verdict to the plaintiff, for he has already received more for the material delivered by him, in about the sum of $16,000, than his competitor, though his proposals, offered to furnish the same amount of pipe to the city.

Instead of injustice having resulted to him, he has reaped a large reward for his fraudulent devices and the success of the scheme entered into with the commissioners of public works for overcharging the city. And under the evidence the jury could do no less than they did, and that was to defeat by their verdict the effort made to render this fraudulent confederation and violation of the law more successful than it already had been.

In addition to that it does not appear by the case that it contains all the evidence which was given upon the trial.

The judgment and order should be affirmed, with costs.

BRADY, J. concurs; BARTLETT, J. not voting.