(66 Misc. Rep. 238.)

MIXER v. ADAM, Mayor, et al.

(Supreme Court, Special Term, Erie County. August, 1909.)

1. MUNICIPAL CORPORATIONS (§ 350*)—STREET IMPROVEMENTS—PAYMENT—ILLEGALITY—TAXPAYERS' ACTION.

A taxpayer, under General Municipal Law (Laws 1892, c. 301), § 1 (Consol. Laws, c. 24, § 51), authorizing a suit by taxpayers to restrain illegal acts by city officers, was not entitled to an injunction restraining the city's paying the reasonable value of work done by a municipal contractor on a city street, because the contract provided for pavement on a "concrete" base, while the specifications on which bids were received provided for pavement on a "macadam" base.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 879; Dec. Dig. § 350.*]

2. MUNICIPAL CORPORATIONS (§ 350*)—STREETS—PAVING—CONTRACT—VARIANCE FROM SPECIFICATIONS—EFFECT—REASONABLE VALUE OF IMPROVEMENT.

That a street paving contract provided for paving on a concrete base, while the specifications on which the bids were received provided for a macadam base, did not deprive the contractor of the right to recover from the city for the reasonable value of the work and materials furnished,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

though the contract was void; the city having levied and collected a special assessment for that purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 879; Dec. Dig. § 350.*]

Suit by Knowlton Mixer against James N. Adam, as Mayor of the City of Buffalo, and others, to restrain defendants, officers of the city, from approving or giving effect to a resolution of the common council, providing for the payment to defendant the German Rock Asphalt & Cement Company, Limited, of the sum of $3,670 for repaving or repairing Swan Street, between Main and Pearl Streets, in the City of Buffalo. On motion of defendant to vacate a temporary injunction. Granted.

See, also, 118 N. Y. Supp. 1125.

Simon Fleischmann and William B. Hoyt, for the motion.

Frank C. Ferguson and Charles J. Staples, opposed.

Samuel F. Moran, for the City and the defendants Zimmerman and McEachren.

WHITE, J. This is a taxpayer's action under chapter 301, § 1, of the Laws of 1892 (now section 51 of the General Municipal Law [Consol. Laws, c. 24]) theoretically to prevent the performance of an illegal act on the part of the city of Buffalo. Main, Swan, and Pearl streets are public and accepted streets of the city. In 1907 Swan street between Main and Pearl had become out of repair, and it was necessary to repair or repave it. The trouble was the infilling of the sewer trench had settled, causing depression in the surface of the street. The city took the proper and necessary statutory steps to improve the condition of the street, as it was in duty bound to do.

In due course of procedure, the city had prior to October 12, 1908, advertised in accordance with law for bids or proposals for the doing of the necessary work. Such bids were to be upon specifications which had been prepared. The specifications required that the work should rest on a macadam base. Only one bid was received, and that was submitted by the defendant the German Rock Asphalt & Cement Company, Limited, and was in the sum of $3,670. This bid was informal, in that it proposed that the work should rest on a "concrete" base instead of a macadam base, as designated in the specifications upon which the advertisement was made. The commissioner of public works reported the bid, and in his report called attention to the informality. At this point in the proceeding it was decided correctly and honestly by the city that under existing conditions a macadam base would be substantially worthless to it, and thereupon, notwithstanding the informality of the bid specifying a concrete base, the city accepted it and directed the commissioner to enter into a contract upon it with the defendant the German Rock Asphalt & Cement Company, Limited, and the contract of October 12, 1908, was made in pursuance of that direction. The substitution of concrete for macadam in the base of the work was greatly to the benefit and advantage of the city.

The contention of the plaintiff is that because of that change in ma-

terial for the base of the work the contract was void, and that because the contract was void (as it alleges) the city thereby debarred itself of the right to compensate the paving company for doing the work. The attitude of the city taken upon the argument of this motion by the representative of its law department, acting under special instructions from his chief, is strikingly unique, for the reason, as the records show, that while the mayor and councilman Wright and, the head of the law department have from the beginning opposed the payment of this claim, the city as a body corporate determined to pay it, and were prevented from doing so only by the injunction herein. The question of the validity or invalidity of the contract is not necessarily a vital one on this motion, and I have decided to dispose of it without passing upon that question, and to assume for the purposes of this motion only that the contract of October 12, 1908, was void, and in all respects unenforceable. That is the only contention of the plaintiff, and perhaps inferentially of the city and its officials if their attitude at this time is correctly reflected by the action of the law department, since the city determined to pay. It must be borne in mind that this is not an action or suit on the contract, but in its essence is for the purpose of procuring an adjudication by this court that it is unlawful for the city to pay the paving company's claim. I assert, with confidence, that under the facts of this case no authority can be found which would warrant such an adjudication. I know of none, and none has been called to my attention. It is conceded that the city took and received from the paving company $3,670 worth of property, and used it in repaving or repairing Swan street between Main and Pearl streets, and that such repaving or repairing was a. necessity, that the property was applied to a public use, that the city assessed that amount against the property owners and taxpayers of the city for the purpose of defraying to that extent the expense of such repaving or repairing and collected the same from said property owners and taxpayers, and that no wrong was intended or done to anybody in the making of said contract.

Carelessly read, some of the cases cited by the plaintiff might seem to sustain his contention, notably the case of McDonald v. City of New York, 68 N. Y. 23, 23 Am. Rep. 144, in which the opinion of the court is somewhat foggy. A careful judicial examination of that case, however, shows it to be in fact an authority in favor of not only the right but the duty of the city to pay the claim in question. The reason for this statement as to the McDonald Case is that in the opinion of the court in that case reference is made to the opinion of the same court—that is, the Court of Appeals—in the case of Nelson v. Mayor, etc., 63 N. Y. 535, where the following language was used:

"If the city obtains property under a void contract and actually uses the property and collects the value of it from the property owners by means of assessments, the plainest principles of justice require that it should make compensation for the value of such property to the person from whom it was obtained."

The court in the McDonald Case said that the above-quoted words distinguish those two cases, and uses the above-quoted language with

approval and as the law to be recognized in all similar cases, and the case at bar comes squarely within the rule there laid down.

The language of the opinion of the court in the Nelson Case is so clear and conclusive that I cannot resist the temptation to quote it in full as to the precise point, though in part it will be a repetition:

"It does not follow out, however, that, though the contract be void, the plaintiff would be entirely without remedy. If, as alleged, the city has obtained the plaintiff's property without authority, but has used it and received the avails of it, it would seem that independently of express contract an implied obligation would arise to make compensation. If the city obtains property under a void contract and actually uses the property and collects the value of it from property owners, by means of assessments, the plainest principles of justice require that it should make compensation for the value of such property to the person from whom it was obtained. If the city obtains money or other property from a person by mistake or without authority of law, it is her duty to refund the money, or either restore such other property or render an equivalent therefor to the true owner, not from any contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial."

Substantially the same language is used by Chief Judge Field in the case of Argenti v. City, etc., 16 Cal. 282.

The $3,670 worth of property was actually taken for and appropriated to a public use, and in such a case the fundamental law of the land prohibits the taking of private property for a public use without making just compensation therefor to the owner. In cases like the one at bar there is an implied promise to pay; as to the proper method of enforcing that promise, we are not at this time concerned. In an action of this character it is justly to be expected that the complaint shall state all the material facts of the case. The complaint in this action does not do that. The judge who granted the injunction herein was not fully informed as to the facts of the case, that is, he was not informed in plain, unequivocal language that the city had taken the $3,-670 worth of property from the paving company and applied it to a public use, although that fact may have been inferable from the papers presented to Judge Wheeler. He was not informed in plain and unequivocal language that the city had assessed the value of that specific property against the taxpayers of the city and collected the taxes for the sole purpose of compensating the paving company. If Judge Wheeler had been fully informed of these facts, it is not likely he would have granted the injunction, because it would have been plain that it was not to promote, but to defeat, justice. The injunction was obtained in disregard of our Eighth Judicial District Court Rule 22, but that in no degree affects the injunction as a provisional remedy.

From my point of view, the injunction under the conceded facts and circumstances of this case, has no foundation in law and should be vacated.