WALTON WATER COMPANY, Plaintiff, *v.* THE VILLAGE OF WALTON, NEW YORK, Defendant.

Supreme Court, Otsego Special Term, January, 1924.

Contracts — action against village for use of water for fire protection — water company agreed to furnish water free for fire protection to avoid threatened injunction action by village — water furnished for forty-three years in return for setoff of special franchise tax — village liable for reasonable value of water furnished — when contract between village and water company deemed vitiated — when water company not estopped from denying validity of contract.

Upon an application duly made in proceedings taken in conformity with chapter 737 of the Laws of 1873 for leave to form a corporation to supply the defendant village and its inhabitants with water as in said statute provided, the village granted a certificate authorizing the petitioners to furnish the village or its inhabitants with pure and wholesome water and for that purpose to lay water pipes in any and all the streets or avenues of the village, and maintain the same, subject only to the provisions of said statute. The organizers of the water

company prior to its incorporation, which was completed in May, 1879, had procured interests in real estate, made surveys and estimates preliminary to the construction of the water works system and on July 5, 1879, entered into a contract for the construction of its entire proposed water works system. In that same month of July the village, failing to induce the corporation to agree to furnish water for fire protection without charge, so long as plaintiff's water works existed, threatened that unless plaintiff gave it the free use of water for fire protection it would immediately stop the plaintiff's work of putting in the water system by an injunction upon the claim of an alleged irregularity in plaintiff's incorporation. At that time plaintiff had expended for work done and incurred by contract liabilities to the full cost of its proposed plant. In this situation plaintiff, solely to avoid litigation and to avoid having the work stopped by injunction, on August 21, 1879, entered into a contract with the village, after it had been approved by the voters of the village, under which hydrants were put in by plaintiff, the cost thereof and their installation paid by the village which under the terms of the agreement had title thereto. No bill was ever rendered by plaintiff for water for fire protection until August, 1922, and since 1900, when the Special Franchise Tax Law went into effect, there has been a mutual setoff of the tax the village was entitled to collect from plaintiff for the fire protection furnished by plaintiff. In July, 1922, the village abandoned its practice of refraining from extending any tax on the special franchise assessment fixed by the state tax commission, and levied and collected such tax and immediately plaintiff demanded hydrant rental, which was refused. *Held*, that in an action against the village for the use of water for fire protection the defendant was liable for the reasonable value of the fire protection it had had, and aside from the agreement of August 21, 1879, the plaintiff was entitled to recover the amount claimed.

The plaintiff was neither deceived nor defrauded with reference to its legal position in the matter of avoiding the threatened legal action to prevent it from continuing its work; if it was, it was its own fault; nevertheless the procuring of said contract by defendant in the circumstances presented all the elements of unlawful coercion and vitiated said contract.

There being no consideration whatever for said contract, since plaintiff was legally incorporated, and the contract having been entered into under duress, the defendant was liable to the plaintiff for the reasonable value of the water for which recovery was sought, the rentals charged by plaintiff being presumably reasonable.

The plaintiff operates under the original consent, which it does not attack, not under the contract of August 21, 1879, which it was virtually compelled to make to avoid litigation, and plaintiff is, therefore, not estopped from denying its validity.

*Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40, distinguished.

ACTION on contract against village for use of water for fire protection.

*Arthur G. Patterson*, for plaintiff.

*A. E. Connor*, for defendant.

KELLOGG, A. L., J. This is an action brought by the Walton Water Company against the village of Walton for the use of water for fire protection.

The defendant claims that by virtue of the contract entered

into between the plaintiff and defendant August 21, 1879, the water company was to furnish water for fire protection to the defendant without charge, so long as such water works existed; that the defendant, therefore, is not bound to pay for the use of the water for which this action is brought.

In August, 1878, eight persons made an application to the village board of the village of Walton and supervisor of the town of Walton in conformity to chapter 737 of the Laws of 1873, as then amended, for leave to form a corporation to supply the village of Walton and its inhabitants with water as in said act provided. The application was acted upon on September 4, 1878, and certificate was granted and the petitioners were authorized to furnish said village or the inhabitants thereof with pure and wholesome water and for that purpose to lay water pipes in any and all the streets or avenues of said village and maintain the same subject only to the provisions of said statute.

Thereafter a certificate of incorporation was made and filed and the incorporation completed May 29, 1879. The certificate was made May twenty-fourth and after reciting the fact that application had been made and consent given pursuant to chapter 737 of the Laws of 1873, as amended, states as follows: " Now, therefore, we hereby certify that on the 22nd day of May, 1879, the persons named in said application met and organized as a water works company under the corporate name and style of The Walton Water Company, with a capital stock of Fifteen Thousand Dollars, and that the office of said company is located in the Village of Walton, Delaware County, New York."

The statement then follows containing the names and addresses of those who at the time of the making of the certificate had an interest in the company. This list contained the names of all those who made the original application and some additional names.

The organizers of the water company had procured interests in real estate, made surveys and estimates preliminary to the construction of the water works system, and on July 5, 1879, entered into a contract for the construction of the entire proposed water works system.

Sometime in July, 1879, negotiations were begun between the defendant and the plaintiff concerning the furnishing of water for fire protection in the village of Walton, the village asking that it be furnished free, and the purpose of the water company being to charge a " reasonable compensation for the amount of capital invested for the sole purpose of fire protection that would have been unnecessary for any other purpose."

No agreement was reached, and on July 17, 1879, a new element was injected into the controversy. The officers of the village claimed that there was an irregularity in the plaintiff's incorporation, in that there were some persons named in the last clause of the certificate of incorporation as having an interest in the corporation who had not signed the original application for leave to incorporate. The defendant threatened that unless the plaintiff gave it the free use of water for fire protection it would immediately stop the plaintiff's work of putting in the system by an injunction.

On the 17th day of July, 1879, the village officers and supervisor met and there was offered and read and temporarily laid on the table a proposed resolution providing for the reconsideration of the consent granted the September previous, and the revocation of the same, and a denial of the application. On the same day the defendant served on the plaintiff what amounted to a demand that its proposition be accepted by the water company.

The water company at that time had expended for work done and incurred by contract liabilities to the full cost of its proposed plant. And by even a temporary interruption it would have suffered damage by the delay and by reason of its obligations to the contractors who were entitled to proceed with the construction of the plant. The result was that on August 21, 1879, the contract, under which the defendant claims the right to water for fire protection free of charge, was signed. The testimony of Mr. Strong Comstock, who was then president of the company, and who had not been interested in it for about eighteen years is, " We signed the agreement to avoid litigation " and to avoid having work stopped by injunction.

No evidence was offered by the defendant to indicate that there was any other or different consideration or motive for the water company's entering into the contract of August 21, 1879.

Before the contract of August 21, 1879, was entered into, the question of its approval was submitted to the voters of the village of Walton, and such approval was given.

Under this agreement the hydrants were put in by the water company and the cost of the hydrants and their installation was paid by the village, and by the term of the agreement the village had title to the hydrants. So far as the installation of the hydrants was concerned, the same plan had been followed in nearly all cases where they were installed since that time. No bill was ever rendered for fire protection until August, 1922. Since 1900, when the Special Franchise Tax Law went into effect, there appears to have been a mutual offset of the tax the defendant was entitled to

collect from the plaintiff for the fire protection furnished by the plaintiff.

The defendant refrained from extending any tax on the special franchise assessment fixed by the state tax commission, and the water company did not present any bill for water for fire protection. In July, 1922, the defendant abandoned that practice and levied and collected the tax, and immediately the plaintiff demanded hydrant rental which was refused and this action is the result. Aside from the agreement of August 21, 1879, the plaintiff is entitled to receive the amount for which the action was brought, for since the defendant has had the fire protection, it is liable for the reasonable value thereof. *Nelson* v. *Mayor of New York City*, 63 N. Y. 535, 544; *Kramrath* v. *City of Albany*, 127 id. 575, 581; *Port Jervis Water Co.* v. *Village of Port Jervis*, 151 id. 111; *Staten Island Water Supply Co.* v. *City of New York*, 144 App. Div. 318. The rents charged by the water company are presumed to be reasonable. *City of Mount Vernon* v. *Interboro Water Co.*, 115 App. Div. 662; *Meara* v. *Citizens Water Works Co.*, 110 Misc. Rep. 738; affd., on the opinion of the court below, 191 App. Div. 913; *City of Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1.

The contract of August 21, 1879, is challenged by the plaintiff on three grounds:

1. That it is *ultra vires.*
2. That it is a *nudum pactum.*
3. That it was obtained by fraud, duress and coercion.

The only real point in issue which affects the decision in this matter to my mind is as to whether or not the contract of August, 1879, whereby the plaintiff was to furnish the defendant with water free of charge, was a valid and binding contract. The plaintiff claims it is not for the three reasons above stated.

The defendant, on the contrary, claims that there is a valid contract, that there was no fraud or duress and there was consideration and that the plaintiff is estopped from denying its validity.

The reason for the plaintiff's contention is that the defendant in revoking its former permission did so on the ground that the water company had not properly incorporated under the statute, as the certificate of incorporation set forth about twice as many names as incorporators as were contained in the petition to the village.

Reference to the statute in question will show that those who propose to form a corporation must be at least seven in number and must present their petition to the village, on the approval of which they may form a corporation.

There is nothing said whatever about limiting the corporation to this number of persons. All of those whose names were on the

petition appear in the certificate of incorporation, and I am not able to see any reason why they could not take in others if they so desired, since they are not forbidden to do so. Clearly they would have a right to transfer their stock after the corporation was formed and have created an entirely new body of stockholders.

The defendant claims that the board of trustees were not bound to deal with these other incorporators, whose names had not appeared on the petition. This argument would seem to be without merit so long as the original ones are included in the number. This point is not urged at all by the plaintiff, and only to the extent indicated by the defendant, both assuming that the incorporation was regular or irregular respectively.

The defendant claims that the consideration for the contract was allowing the plaintiff to lay its mains in the streets, and carry on its business there; in other words, the granting of permission. I am not able to see how this is a good consideration, since the permission had been granted the previous year, and unless there was some defect, how could that permission be lawfully withdrawn especially since the plaintiff had already acted, let its contracts and started construction?

The purpose of the proceedings to revoke the consent given almost a year previous is so plain as to make all comment with respect thereto unnecessary. It was not only an effort to void the consent which they had lawfully given and which they were in all honor bound to regard as binding upon the village, in that the water company had proceeded to act thereon, but it was notice to the water company that an effort was about to be made to compel it to do something which it was not otherwise legally required to do.

The further contention is also made by the defendant that the plaintiff has used hydrants which belonged to the village of Walton for the purpose of flushing its mains. This is a disputed question of fact in the case, but I am convinced it is immaterial. Nothing was said at the time about this, and was certainly not contemplated as the consideration for the contract. If they had been used for that purpose it had been in recent years and long after its execution. If this claim is of any value to the village of Walton, it could only be one upon which to base an independent action or counterclaim, and could under no circumstances be held to become a part of the consideration for this contract. I am not of the opinion that the plaintiff was deceived or defrauded with reference to its legal position in the matter; if it was, it was its own fault.

I have arrived at the conclusion, however, that there was duress, in that the village of Walton, without just reason therefor,

threatened legal action to prevent the company from continuing its work. This would have caused a great deal of expense and inconvenience with that work already going on and the contract let. The procuring of the contract by defendant under these circumstances presents all the elements of unlawful coercion, such as to vitiate the contract. It was to avoid this legal action that the so-called contract was entered into. There being no consideration whatsoever for the contract, since the company was legally formed, and the contract having been entered into under duress, it must be held that the village is liable to the company for the reasonable value of the water for which recovery is sought in this action.

The question of the prescriptive right of the village to the water because of its continuous use through so long a period of years has not been raised in the pleadings or briefs, but I do not regard it as a material question since it was offset by allowing the plaintiff to go free from taxes which would defeat any prescriptive right, if there could be one.

The defendant contends also, as has been stated, that the plaintiff is estopped from denying the validity of the contract, citing *Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40, and quotes at some length from the case. I do not think that this contention has any merit since the plaintiff is not attacking the license under which it operates, but is contending that the contract, which it wishes to defeat in its entirety, and by which it is not legally benefited in any way, was obtained by duress. The proposition as set forth by the plaintiff is to the effect that the plaintiff cannot attack the license under which it operates. In the case cited that was not attempted and the company therein tried to prove itself a trespasser. The court held that it could not attack the authority under which it had operated and which it had sought in the beginning. That is quite a different proposition from the one in the case at bar, as here the company operates under the original consent, not under the contract it was virtually compelled to make to avoid litigation.

The village should, therefore, be held liable for the reasonable value of the water used which was stipulated to be the amount claimed in the complaint.

Judgment accordingly, with costs.