the attorney's lien may be enforced in the action itself. As we have seen, that was the method of enforcing it when fee bills existed, and measured the compensation of attorneys. It would not be suggested that that has not also been the method in respect of taxable costs. It seems to me to follow that it is also a proper method in respect to compensation agreed upon, for there are not two liens, one for taxable costs and one for compensation, to be enforced separately, but on the contrary, there is only one indivisible lien. The lien which has long existed in favor of attorneys was by the said Code amendment extended unmistakably, and so as to do away with doubt or controversy, to any compensation due to the attorney by agreement, express or implied. It is the same lien in character and in equitable conscience which existed under the fee bill, only extended to meet the changed relations of attorney and client, in that they are permitted to agree upon whatever compensation to the attorney they please. The motion is therefore granted, the court to take testimony at some convenient time, or a reference may be taken if the parties agree to it. The money may be paid into the Kings County Trust Company to the credit of the action to await further order.

---

(81 Hun, 395.)

### MOYNAHAN v. BIRKETT et al.

(Supreme Court, General Term, Second Department. October 26, 1894.)

COUNTIES—LETTING CONTRACTS—BIDDING.

Under Laws 1884, c. 230, § 3, providing that a contract for the erection of improvements on the county farm shall be let to the lowest responsible bidder, a provision in the contract which fixes the prices for extra work without having invited bids on that subject is illegal, and the payment at the rates specified in such clause will be enjoined at the suit of a taxpayer.

Action by Daniel Moynahan against James W. Birkett, Henry H. Adams, as treasurer of the county of Kings, and Norman S. Dike and others, as supervisors of said county, to enjoin payment of moneys claimed by defendant Birkett to be due under a contract for erecting improvements on the county farm. There was a judgment in favor of plaintiff, and defendant Birkett appeals. Affirmed.

The opinion of Mr. Justice BARTLETT at special term is as follows:

On February 1, 1893, the board of supervisors of Kings county entered into a contract with James W. Birkett, whereby Mr. Birkett agreed to furnish certain materials and do certain work at the county farm, at King's Park, Long Island, at prices which were specified in the body of the contract. The law providing for the establishment of the county farm requires the board of supervisors to advertise for proposals for the erection of the buildings and for the other improvements there, and to award the contract to the lowest responsible bidder or bidders. Laws 1884, c. 230, § 3. This provision was obeyed in reference to Mr. Birkett's contract, so far as the work was concerned which was mentioned in the contract itself, as distinguished from the specifications. The contract, however, refers to two sets of specifications. One set is known as "General Specifications, B," and is expressly made a part of the agreement. Clause 37 of specifications B relates to extra work. It declares, in the first place, that proposals and contracts must be under-

stood to include and cover in full all the several parts and appurtenances of such structure, so as to make a complete and finished work on the location established for the same, and for its complete use and operation, precluding all claims for extra work; but it goes on to provide that additional payments may become due and payable for extra work done in obtaining stable foundation, or for materials required to form necessary artificial foundations, or on account of incidental or supplemental modification of the plans, locations and grades ordered by the proper authority. "For such extra work," says this clause, "the contractor will be paid the following prices: For earth excavation, 25 cents per cubic yard. For excavation of foundations, including all necessary draining and bailing, 45 cents per cubic yard. For spruce or hemlock sheathing and shoring which may be ordered left in the ground, thirty-five dollars per thousand feet, board measure. For each cubic yard of rubble masonry, eight dollars. For each cubic yard of concrete, five dollars. For each cubic yard of brick masonry, twelve dollars." The effect of this provision is to do away with all competition whatever between bidders, so far as extra work is concerned. The board of supervisors practically say to contractors who contemplate bidding in response to their invitation for proposals: "We will award the contract to the lowest responsible bidder for the work to be mentioned in the body of the contract; but, if any extra work proves necessary, we will pay for it at the rates fixed in clause 37 of specifications B." In other words, they construe the statute as requiring a letting of the work to the lowest bidder only with reference to the main portion of a contract, and not at all with reference to the extra work. I think this is an erroneous construction. In order to carry out the true purpose and intent of the statute, it is the duty of the board to endeavor to get all the work under a contract—whether it be the principal part of the undertaking, or additional labor which may be requisite—done at the lowest price at which a responsible person will agree to do it. If extra work is contemplated as likely to be needed, then the competing contractors should be invited to bid for that, as well as for the main work. The figures placed in clause 37 of specifications B as the prices to be paid for extra work should have been arrived at as the result of competitive bidding, like the figures in the body of the contract, instead of being fixed in advance by the public authorities.

The present action is a taxpayer's suit brought to prevent the payment to Mr. Birkett of three items which he claims under the contract in question. These items are $17,100 for 38,000 cubic yards of sewer trenching, $32,725 for 935,000 feet of sheathing, and $25,401.42 for 12,829 square yards of granite pavement. Mr. Birkett asserts that sewer trenching is the same thing as the excavation of foundations mentioned in clause 37 of specifications B, and that the sheathing is covered by the same clause. Assuming that he is right, the objection still remains that the board of supervisors undertook to make this part of the contract without reference to the statutory requirement, that the work should go to the lowest responsible bidder. Their action in so doing was in disregard of the law, as it seems to me, and hence he cannot be entitled to payment for the additional work mentioned in these two items at the rates fixed in clause 37. In reference to the item of granite pavement, the case is different. Gutters were mentioned in the main body of the contract, and Mr. Birkett's affidavit shows that the granite pavement was merely additional guttering, which proved necessary, and for which he charges at the same rate as he bid. The specifications declared that the schedule of quantities upon which the bids were based were approximate,—as near as could be determined in advance. The agreement of the contractor was to do the whole work of regulating, grading, curbing, guttering, and macadamizing the roads at the county farm. As in the case of Sullivan v. President, etc., 122 N. Y. 389, 25 N. E. 366, the quantities mentioned in the contract were only the estimates of the municipal authorities, and, if more material of the same sort was needed in any instance, the contractor was bound to furnish it. This obligation on his part implies the corresponding obligation on the part of the authorities to pay him for the material so furnished. My conclusion is that the clause in the contract fixing the prices for extra work without having invited bids on that subject is illegal, and that the payment of Mr. Birkett's claims for sewer trenching

and sheathing at the rates specified in that clause must be enjoined, but that no sufficient cause has been shown for interfering with the payment of the claim for granite pavement. The plaintiff, upon giving an undertaking in the usual form, in the sum of $1,000, may have an injunction, during the pendency of the action, restraining the county treasurer from paying the claims of the defendant Birkett for the two items of extra work described in the pleading as sewer trenching and sheathing. The costs of this motion will abide the event of the action.

Argued before BROWN, P. J., and DYKMAN and CULLEN, JJ.

James & Thomas H. Troy, for appellant.

Sanders Shanks, for respondent.

PER CURIAM.    Order affirmed, with $10 costs, on the opinion of special term.

---

(82 Hun, 158.)

## MURPHY et al. v. STICKLEY-SIMONDS CO.

(Supreme Court, General Term, Fourth Department. December 7, 1894.)

1. CONTRACTS—PERFORMANCE.
    Whether a contract has been substantially performed is a question of fact.

2. SAME—WAIVER OF NONPERFORMANCE.
    Defendant cannot take advantage of the failure of plaintiff to perform the contract within the stipulated time, where the failure was due to a delay caused by defendant.

3. SAME—SUBSTANTIAL PERFORMANCE.
    A finding that the contract was substantially performed is not inconsistent with a finding of defects in the work which amounted only to 6 per cent. of the contract price.

Appeal from judgment on report of referee.

Action by David Murphy and John W. Gee against the Stickley-Simonds Company and others to foreclose a mechanic's lien. The referee awarded damages for the balance due on the contract, and also $450 for extra work performed and materials furnished to defendant, finding a total amount in favor of plaintiffs of $5,416.66. Defendant the Stickley-Simonds Company appeals.    Affirmed.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

Hoyt & Farrington, for appellant.

Stone, Gannon & Petit, for respondents.

HARDIN, P. J.    Plaintiffs, copartners and contractors, on the 4th day of May, 1892, entered into a contract with the Stickley-Simonds Company, of the city of Auburn, to furnish materials necessary to the erection and completion of all work according to plans and specifications prepared by an architect for the erection of a factory building at Eastwood Heights, near the easterly limits of the city of Syracuse, and the defendant stipulated to pay therefor the sum of $22,000, payments to be made "during the progress of the work upon the estimate of the architect." The owner reserved "the privilege of changing any part of the labor or materials without in any way invalidating the contract." The contract contained a provision, viz.: