(7 App. Div. 501)

### ABELLS v. CITY OF SYRACUSE.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—EXTRA WORK.
   Plaintiff's assignor entered into a contract with defendant city to grade a street. In the course of the work it was found necessary to build a retaining wall to support an embankment, as the earth slope required by the contract would injure adjoining property, whereupon the city authorities verbally directed the contractor to construct the wall. *Held*, that the construction of such wall was extra work, within a provision of the contract that all extra work should be done on a written order. Follett and Green, JJ., dissenting.

2. SAME—WAIVER OF WRITTEN ORDER.
   The requirement of a contract that all extra work should be done on a written order may be waived by the city authorities.

3. SAME—RATIFICATION.
   Where a contractor did extra work on the verbal order of the city authorities, and monthly estimates were made, and the correctness thereof was certified in writing, and part of the price was paid by the city, there was a ratification in writing, sufficient to satisfy the requirement of the contract that all extra work should be done on a written order. Follett and Green, JJ., dissenting.

4. SAME—RECOVERY ON QUANTUM MERUIT.
   Where a contractor did work necessary to carry out his contract, either as extra work or to meet exigencies unforeseen when the contract was made, he is entitled to recover therefor on a quantum meruit, though the city charter (Laws 1885, c. 26, § 155) provides that, if any work shall involve an expenditure exceeding $75, it shall be done by contract let to the lowest bidder.

Appeal from circuit court, Onondaga county.

Action by W. Irving Abells, as assignee of Abells & Strong, contractors, against the city of Syracuse, to recover $1,614.99, balance claimed to be due on a contract for grading Boyden street

from Putnam street to Teall avenue. There was a judgment in favor of plaintiff for the full amount claimed and for costs, and defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles E. Ide, for appellant.
Baldwin & Kennedy,.for respondent.

WARD, J. The complaint in this action alleged: That a firm Abells & Strong in June, 1893, entered into a contract with the defendant, the city of Syracuse, whereby it was agreed that Abells & Strong should grade Boyden street in that city from line to line from Putnam street to Teall avenue, according to specifications made, for which grading, labor, and materials furnished by them the defendant agreed to pay 33 cents per cubic yard for all excavations and 33 cents per cubic yard for all embankments; such payment to be made as the work progressed, upon estimates to be made by the commissioner of public works of the city, which estimates were required to be made monthly after the commencement of the work; the said defendant being allowed to retain of the moneys payable on the contract the sum of 10 per cent. for a period of six months after completion. That the contractors entered upon the performance of the contract; and the complaint further alleged that during the progress of the said work it became necessary to build a stone wall as a retaining wall to properly grade said street; and that defendant, through its officers and agents, being duly authorized, directed the said Abells & Strong ,and employed them to furnish material, excavate, and build said wall, which the said Abells & Strong did, and which labor and materials so furnished and performed were reasonably worth the sum of $913.63, which the defendant promised to pay, etc., and which became due and payable before the action was commenced. The complaint alleged also that there was due the plaintiff by reason of the premises the sum of $1,604.99, with interest from July 6, 1894. The cause of action was assigned before the commencement of this action by the contractors to this plaintiff. The defendant's answer put in issue the matters in controversy in the action. The firm of Abells & Strong, pursuant to a notice duly advertised, issued by the common council of the defendant, dated June 26, 1893, for proposals to grade Boyden street from Putnam street to Teall avenue, on the 3d of July, 1893, filed with the city a bid to construct the work for the prices stated in the complaint, and further provided "for all extra work done by written order of the commissioners of public works, its actual reasonable cost to the contractor as determined by the commissioners, plus fifteen per cent. of said cost." This bid was accepted by the city, and the contract was entered into between the parties in writing for the work in July, 1893, pursuant to bid. This contract provided, among other things, that the work should be carried on as directed by the commissioner of public works of the defendant, and further

provided that the engineer of the city could make alterations in the line and grades, and the commissioner of public works in place, form, position, dimensions, or material of the work, before or after the commencement of the construction.    If such alteration diminished the quantity of work to be done, no claim should arise to the contractors for anticipated profits; but, if the alteration increased the amount of work, such increase should be paid for according to the quantity actually done, and at the price established for such work under the contract, or, in case there is no price established, it should be paid for at its actual reasonable cost as determined by the commissioner, and all extra work should be done by written order of the commissioner.    The contract also provided that when an embankment was made it should, at the top, be of the width of the street from line to line, and the sides should be sloping, and formed of earth of such a slope as to properly support the embankment.    The work proceeded under the direction of the engineer, and with the knowledge of the commissioner of public works, who, being out of health, substantially relegated his duties in the premises to the engineer.    These officers, under the city charter, were the proper officers to represent the city in this work. In the progress of the work a fill became necessary along the side of the street, varying from 3 to 12 and 15 feet in height, so that, in attempting to perform the contract, it was discovered that if the top of the embankment was of the width of the street, the toe of the embankment must necessarily extend over upon the premises of abutting owners sufficient to support the embankment with the earth slope required by the contract.    If the fill was 15 feet deep, the toe of the bank would be 30 feet in upon the adjoining owners' property.    The adjoining owners refused to permit any portion of the embankment upon their premises, and forbade it.    An emergency, therefore, suddenly arose, which neither of the parties seemed to have contemplated when the contract was made, and to persist in the performance of the contract would render all concerned liable as trespassers, and the work would probably be stopped. The only way out of the difficulty was, therefore, to construct a vertical wall, commencing at the line of the street, instead of the sloping embankment, which would involve an expenditure not contemplated by the parties when the contract was executed.    The city engineer, with the knowledge and consent of the superintendent of public works, verbally directed the contractors to construct this wall, which was done at an expense of $913.    There were 37 yards of excavation for the foundation, which, at 33 cents per cubic yard, amounted to $28.71, and there were laid 81 cords of stone wall, amounting to $884.92.    Monthly estimates were made on this contract, and the commissioner of public works certified to the correctness, in writing, of the claim for the construction of this wall, and also in another monthly estimate recognized in writing the propriety of this work.    The common council accepted the estimate of the engineer, acting for and in the name of the commissioner, of October 23, 1893, of the work, which embraced $550 for the stonework, and ordered it paid, which was done; but subse-

quently the common council ordered the commissioner of public works to make a final estimate or account omitting the said extra work, and making a statement that there was finally due the contractors on the contract but $792.36, and the common council adopted a resolution that the stone wall was built without the proper authority, and the city was not liable. The city engineer was the only witness sworn. He testified that the work was necessary in order to carry out the contract to build this vertical wall, and that it was extra work. The trial court found that it was extra work, and that the city, with full knowledge of the situation, had ratified the act of the city engineer, acting for the commissioner of public works, in ordering the extra work, by paying for a part thereof, and recognizing it as valid, and accepting the work as performed; that the extra work was worth the amount claimed therefor by the plaintiff; that during the progress of the work it became necessary to build the wall as a retaining wall to properly support the earth drawn upon the street for the purpose of making the fill, and in order to protect the property of adjoining owners; and that the defendant, through the city engineer and the commissioner of public works, authorized and directed the contractors to build the said wall. These findings are sustained by the evidence. The work was not only necessary and proper, but it was performed in good faith. No fraud is claimed, but it is admitted that the contractors had properly performed the work, and it was worth the amount claimed by the plaintiff. The defendant has had the benefit of this work, and the plaintiff should not be deprived of the judgment in this case, in view of his strong equitable claim in the matter, except the law absolutely requires it.

The learned counsel for the defendant insists that this stonework was not legally authorized by the defendant, and cites the provisions of the city charter (Laws 1885, c. 26, § 155) which provides:

"Whenever the common council shall order any work to be done or materials or supplies to be furnished under the provisions of the foregoing sections of this title, the same shall be done by contract if it shall involve an expenditure exceeding seventy five dollars and such contract shall be let to the lowest bidder," etc.

This is a part of title 9 of chapter 26, which is entitled "Local Assessments and Improvements." The 138th section provides that the city shall have jurisdiction to construct and repair sewers, pavements, gutters, sidewalks, and make other local improvements, subject to the provisions of that act. The defendant's counsel also contends that, as the extra work was not ordered by the commissioner in writing, there can be no recovery for this work. The last objection will be answered first. This provision of the contract could be and was waived by the commissioner and the defendant, and, whether waived or not, it was ratified and adopted by the commissioner in writing, which was an equivalent to an original authority in writing. There is more difficulty with the first objection, and it is earnestly contended by the defendant that it had no power either to order this extra work, without advertising

for bids for it, under the charter, or to ratify it after the work had been done, and he appeals to the well-known principle that a municipal corporation finds the measure of its power in the statute creating it or imposing the power. This principle has been invoked in many cases of local improvements. In cases where fraud was apparent and collusion manifest between the corporation officers and the contractors, and under the guise of extra work they have sought to avoid the publicity of advertising for bids for work and material, the courts have been careful to protect the people from such fraudulent contracts and contrivances, and hold the municipality strictly to its statutory duties and obligations; but in other cases, like the one at bar, where the corporation has received a substantial benefit, and retained such benefit, and the work was necessary in carrying out the contract, either as extra work or to meet exigencies which were unforeseen when the contract was entered into, the courts have been more lenient in their construction of corporate powers upon principles of equity, for they have held that the corporation is estopped from asserting a want of power in itself or its officers when they have induced and engaged in the performance of the very acts which they seek to repudiate for the want of power to perform them. In Brady v. Mayor, etc., 20 N. Y. 312, where, under the charter of New York City, that required all work performed for the city which should cost more than $250 should be subjected to public competition, a contract for setting curbs and gutter stones and flagging a portion of a street omitted all reference to rock excavation in the street, which would be about seven-eighths of the work. The court held that such a contract was void, and the common council could not ratify it; but the court says, at page 319:

"It is not necessary to deny that one who has bona fide performed labor under a contract which is void for a failure to comply with the statute may maintain an action against the city to recover a quantum meruit where the work has been accepted by the city, and gone into use for public purposes."

That is the case at bar exactly, and that portion of the complaint covering this extra work is based upon a quantum meruit. In re Merriam, 84 N. Y. 596, was also a New York case, where, in the advertisement for proposals for constructing a sewer, a price was fixed for rock excavations, which constituted a large portion of the work. Held that this was a violation of the charter requiring competitive bids; clearly so, where the city assumes to fix the price in advance. In Re Rosenbaum, 119 N. Y. 24, 23 N. E. 172, where a contract was let after advertisement, and upon competition for paving a street with a patent pavement, the work of laying bridge stones or cross walks was not included, but the work of laying those cross walks was awarded without advertisement or competition, in violation of the provisions of the charter of New York City, upon the order of William M. Tweed, then the commissioner of public works. This last order was held to be void, and properly so. It was a matter that could and should have been included in the original contract, and submitted to competition. Smith v. City of Newburgh, 77 N. Y. 130, was a case where a lease

executed to the city was void under its charter. Moynahan v. Birkett, 81 Hun, 395, 31 N. Y. Supp. 293, was where the public authorities assumed to fix in advance the prices for extra work without knowing what such extra work would be in detail, and thus shutting off competition therefor. This case is subject to the same criticism as In re Merriam, 84 N. Y. 596. The cases above cited are those relied upon by the defendant's counsel to sustain its contention here. In view of the importance of the question, we have reviewed them at some length, and it is not perceived that they aid the defendant.

The learned judge at special term, in directing this judgment, cites as authority Weston v. City of Syracuse, 82 Hun, 67, 31 N. Y. Supp. 186. An examination of that case and the authorities it cites will be useful in sustaining the respondent's contention here. Reference may also be profitably made to Smith v. City of Utica (Sup.) 6 N. Y. Supp. 792; Nelson v. Mayor, etc., 63 N. Y. 535; Peterson v. Mayor, etc., 17 N. Y. 449; Mulholland v. Mayor, etc., 113 N. Y. 631, 20 N. E. 856; Fleming v. Village of Suspension Bridge, 92 N. Y. 368; Moore v. Mayor, etc., 73 N. Y. 238, opinion, p. 248. At the last page the court says:

"When there has been a bona fide performance of a contract of which the city has had the benefit, there is a strong equity in favor of the contractor seeking his pay entitling him to the benefit of a ratification even of a void contract upon slight evidence, if the ratifying body had power over the subject of the contract, and of an estoppel when an estoppel fairly results from the conduct of the general agents of the city;" citing with approval the remark quoted from Brady v. Mayor, etc., 20 N. Y. 312.

And Judge Martin, in Smith v. City of Utica, supra, makes the same quotation from Moore v. Mayor, and cites upon the question of estoppel several cases at page 794, to which reference may be made.

While we obtain much benefit from the light of adjudged cases in solving vexed legal problems, we must go back primarily to the facts in each particular case to properly determine it. In the case at bar the city had general power, under its charter, over local improvements to streets, with a duty attending it. Officers were created, with power to represent the city, and by direction of those very officers the plaintiff's assignor made the improvements in good faith which we are considering. While it may not be necessary to invoke the doctrine of estoppel to secure justice in this case, a strong case is presented where the defendant can be estopped from asserting its want of power. To be permitted to lie by, encourage plaintiff to make these expenditures, reap the fruits of those expenditures, and then seek to avoid responsibility by asserting a want of power to do the very things that had been done and were necessary to be done, if successful, would work injustice; but we have reached the conclusion, with the trial court, that this was properly extra work, and within the power of the superintendent and engineer to direct. The bid made by the contractors, the contract into which they entered with the city, indicated that extra work might occur, and would be necessary. Indeed, we well know that hardly a work of this kind of any magnitude does occur

but what, in the development of the work, it becomes apparent that there should be some variations from the original contract which could not be provided against or anticipated when the contract was made so as to be opened to competitive bidding. As to such matters the contract contains ample provisions, and the defendant imposed the power, by its contract, upon its superintendent of public works and its engineer to make these changes, and ratified them when made. We concur with the trial court in its conclusions.

The judgment should be affirmed, with costs.

HARDIN, P. J., and ADAMS, J., concur.

GREEN, J. (dissenting). 1. Was it "extra work," within the true meaning of the contract? The restriction as to $75 must not be taken too strictly in its application to what is really extra work. I can conceive of cases where it would produce much inconvenience and some delay in carrying on work if it should be required to advertise for bids. Something may arise or occur in respect of circumstances and conditions of work that would render it necessary to make some restrictions or changes in the manner or method of doing it. In such matters the limitation must be reasonably, if not liberally, interpreted, for the reason that it would be connected with the contract. The character of the work contracted for would not be changed if it can be seen that the change or method of doing the work might be included or embraced in the contract itself. But this work in question can in no wise be called "extra work," for this character of work was not embraced in the contract. Nothing as to stone wall or mason work of any kind was included in this contract. Then the cost,—one-third as much as the entire original cost of all the work under the terms of the contract. It is clear that this was a very important part of the work, and an important alteration of the contract. The commissioner had no power to modify the contract in essential and material particulars. It is going very far to hold that such a modification, involving a cost of $900, is merely incidental to the work, and does not vary the terms of the contract; that the officer of the city was authorized to make it. It was new work in its nature and character, and not incident to the performance of the contract. It was not a slight, but a very material, deviation from the contract. The plaintiff has disregarded the very terms of his contract in going on with this work without previous authority, and has acted in opposition to the charter. The trial court, in arriving at a result favorable to the respondent, relies chiefly upon the case of Weston v. City of Syracuse, 82 Hun, 68, 31 N. Y. Supp. 186. That case differs from the one under consideration in many important particulars. In that case the council modified the contract. The grade of the 1,000 feet, so far as it was not made to conform to the original contract, necessarily had to be changed, or there could be no connection with or through the outlet already constructed and adopted by the resolution. The 1,000 feet was done in accordance

with the contract and specifications, except in matter of grade. At the beginning of that 1,000 feet, the sewer was about 2 feet above the grade established by original map; and, at the end of the 1,000 feet, it was at grade. It was absolutely necessary, in order to do the work properly, that the grade should be changed. There was also a defense interposed as to defects. City claimed that the council had no power to modify the contract. Court held that city could not set up want of power in respect to irregularities in its exercise. Submitted to jury whether council, with full knowledge of all the facts in relation to the condition of the sewer, had modified contract and waived all objections as to manner of performance, in so far as it did not conform to original contract, and whether, except as it had been modified or waived, the contract had been substantially performed. The amount of extra work is not stated in that case. It seems to me that this case cannot be said to be decisive of the questions presented on this appeal, as there exist substantial differences between that case and this. The respondent calls attention to the case of Fleming v. Suspension Bridge, 92 N. Y. 370. The contract was for $5,185. There the extras claimed were $35, $70, and $600. The court considered they were slight variations. Held that, the commissioner having knowledge and assenting to extra work, no formal resolution was necessary. There was no restriction as to amount of work required to be let to bidders. Messenger v. City of Buffalo, 21 N. Y. 196, cited by respondent, shows that more sand was required by reason of the city making the excavation deeper than was originally intended by the contract. An examination of the opinion shows there is a very substantial difference between that case and the one under consideration. In Moore v. Mayor, etc., 73 N. Y. 238, cited by respondent, it was held that failure to publish ordinance in newspaper, recommending a local improvement, was a mere irregularity, so far as the contractor was concerned.

2. There is no evidence of a ratification by the council, with full knowledge of the facts. When the council ordered part payment, they took no affirmative action upon this modification or deviation from the contract, and a ratification cannot necessarily be inferred. The council may have supposed and believed that this was for extra work, within the meaning of the contract, and not that the commissioner had greatly modified it, and made a new contract for new and additional work in material particulars. It is not reasonable to expect that, every time the council orders a payment upon the report of the officer in charge of a work, the aldermen have in their minds a full knowledge of all the contracts, their terms and provisions, and that the statement of extra work is such, within the true meaning of the contract, and not new work required by important changes in the contract, made by the officer without authority. The council may act upon the presumption that the officer has kept within the scope of his powers, and has not undertaken to usurp the powers of the council. The evidence fails to establish that the objectionable part of these transactions was known to the

council, or that they had anything more than the general idea that the work thus certified to was work done under the contract. It appears that, when the council did have knowledge, it repudiated the work done under the direction of the city engineer. A part payment on account of contract, made by committee of council, there being no vote or order of council, is not ratification. "An officer who was not authorized to contract has no authority to ratify." Boston Electric Co. v. City of Cambridge, 163 Mass. 64, 39 N. E. 787. Where the common council has no authority to create a liability against it by express contract, it cannot legalize such a contract by acknowledgment, ratification, or otherwise. Lyddy v. Long Island City, 104 N. Y. 218, 10 N. E. 155. And see Dickinson v. City of Poughkeepsie, 75 N. Y. 65. See, also, Parr v. Greenbush, 72 N. Y. 463–472. Where the contract for the work done is unauthorized, and is originally invalid, because not entered into in the manner provided by the charter, part payment upon the work done does not constitute a ratification. Town of Durango v. Pennington, 8 Colo. 257, 7 Pac. 14. Neither can "the estoppel be placed upon the fact that the city received any benefit from the increased work which it accepted. There was no such benefit; and the city, in order to take the work as contracted to be done, was forced to accept the work in its condition at the time of acceptance." In the case referred to, the plaintiff excavated deeper than contract called for, at request of the city surveyor. Genovese v. Mayor, etc., 55 N. Y. Super. Ct. 397–407. So, in the case at bar, the city receives no benefit from the work for which extra compensation is demanded, for it receives only what it originally contracted for. In order to receive that, it was forced to accept the work in its condition when completed under the terms of the contract. The benefit here was for abutting owners. The city holds the streets in trust for the public generally, as public highways, even though it owns the fee. Properly speaking, the streets are not the property of the city as a corporation,—not city property. The city acts as agent or trustee of the streets for the people of the whole state. It is therefore apparent that the respondent cannot be allowed to recover upon a quantum meruit, as the city has received from him only what it contracted it should receive,—what the respondent contracted to perform. The city obtains no additional benefit from the work, and its acceptance was of the work performed under the contract and in accordance with it.

3. Of course, the city cannot be held liable without ratification, simply by "acceptance" of the work. But, if this was extra work within the contemplation of the parties when the contract was executed, the city might be held without any subsequent ratification; and, if it is not such, the commissioner had no power, but was necessarily prohibited from ordering it.

4. Assuming, as we must, that this was not extra work which the commissioner might order, but required the assent of the council, could the council legally contract for such new work without complying with the charter? Where a contract has been made by

the city, and other work and material is done and furnished, and the extra work and material are required by reason of a substantial alteration of or addition to the work as originally contemplated and contracted for, requiring new and distinct materials, the work and materials are not extras, and the provisions of the charter in letting such work must be observed; otherwise, there can be no recovery as for extras. Brady v. Mayor, etc., 20 N. Y. 312; In re Merriam, 86 N. Y. 596, 604, 605; Bonesteel v. Mayor, etc., 22 N. Y. 162; Murphy v. City of Albina, 22 Or. 106, 29 Pac. 353; Kramrath v. City of Albany, 127 N. Y. 582, 28 N. E. 400; McDonald v. Mayor, etc., 68 N. Y. 23; Brown v. Mayor, etc., 63 N. Y. 243; Smith v. City of Newburgh, 77 N. Y. 136, 137; Moynahan v. Birkett, 81 Hun, 395, 31 N. Y. Supp. 293; O'Brien v. City of New York, 139 N. Y. 545, 35 N. E. 323. There is no power in the subordinates of a city to vary the contract as made. The provisions of the charter must be observed, and an officer of the city, in control and supervision of the work, cannot authorize a deviation from the contract, plans, and specifications. Stuart v. Cambridge, 125 Mass. 109. The officers of a city cannot modify an essential provision of a contract. Bonesteel v. Mayor, etc., 22 N. Y. 162. Now, this large amount of stone was not—in fact, no stone whatever was—originally contracted for; and yet it is claimed, in the teeth of the $75 restriction, that the council could agree to give plaintiff work amounting to $900, based upon the cost plus 15 per cent. of such cost! Would not that be in direct violation of the spirit and plain intent of the law? And here it is claimed that the council made such a contract by ratification, when there is not a particle of evidence indicating any such intention. The inference drawn of ratification seems to me clearly unwarrantable. The plaintiff's claim seems to be that, as he has performed the work, he must be paid by this wealthy corporation. Even though he knew the restrictions of the charter in making contracts with this municipality, and even though he disregarded the terms of his own contract with the city, still he must be paid for his work. There is nothing to show that the council consented to such an alteration of the contract. The officer reported to the council that it was extra work, properly speaking, and the council believed him, and relied upon his word, but, upon discovering the true condition, repudiated his acts. If this was extra work, ratification is immaterial. But if, on the other hand, it was the result of very substantial departure from the work as contracted for, it must, as we have seen, be ratified with knowledge. We should not yield to the specious plea that the work has been done by the contractors, and therefore the city should pay for it. We should not seek to uphold such a transaction, so clearly contrary to the provisions of the statute. If we do, we will entirely frustrate the carefully designed scheme and plan of this municipality to protect the city from loose, reckless, and indefinite expenditure of the people's money. The provisions of the statute should be strictly enforced, so that the scheme devised and promulgated for the purpose of limiting the power of the city's

officials in incurring obligations on the part of the municipality shall be enforced and carried out, and not defeated and annulled.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

FOLLETT, J., concurs.