THE VILLAGE OF FREDONIA, Plaintiff, *v.* FREDONIA NATURAL GAS LIGHT COMPANY, WILLIAM E. CARROLL, SAMUEL CARROLL and ELWAYNE E. TORRENCE, Defendants.

(Supreme Court, Erie Special Term, January, 1914.)

Corporations — forfeiture of special franchise to gas company — General Corporation Law, § 101 — dissolution — Public Service Commissions Law, § 68.

A franchise to lay and maintain gas pipes and other machinery underground along or across any or all of the streets of a

village, and which imposes no obligation on the company to furnish gas to any one, is not forfeited by a failure for three years to so use the streets.

That the gas company had suspended its ordinary and lawful business for more than one year and was liable to a judgment of dissolution and the forfeiture of its corporate rights and privileges, under section 101 of the General Corporation Law, did not affect its special franchise to maintain a piping system in the village streets, that being a property right which survives the dissolution of the corporation and belongs to its creditors and stockholders upon a distribution of its assets.

A party other than the state may not in a collateral proceeding contend that a corporation has by a failure to exercise its corporate powers forfeited its existence; that can only be accomplished by the judgment of a court of competent jurisdiction in an action brought for that purpose by the attorney-general, in the name of the state, under said section 101 of the General Corporation Law.

Where, after the gas company had for three years ceased to use its pipes to furnish gas, it had paid the tax imposed upon its special franchise in the streets, the village was estopped from asserting that the company had forfeited its franchise for nonuser.

The provision of section 68 of the Public Service Commissions Law held not to apply to the company's special franchise.

Motion to continue a temporary injunction.

Louis L. Thrasher, for plaintiff.

William S. Stearns and George Clinton, for defendants.

Wheeler, J.   This is a motion to continue a temporary injunction restraining the defendants from opening or digging up the streets of the village of Fredonia, Chautauqua county, N. Y., and installing therein any gas mains, pipes or lines, and from exercising or attempting to exercise any rights under a certain franchise granted by the village to Elias Forbes and one, February 29, 1864, now claimed to be

owned by the defendant the Fredonia Natural Gas Light Company.

Pursuant to powers conferred in its charter, after reciting that Elias Forbes and his associates had "been at great expense in collecting" natural gas "and distributing it along the streets for the purpose of lighting the village," the trustees of the village granted to Forbes and such other persons as he might associate with him, and to their successors and assigns, "the exclusive privilege of laying their gas pipes and other machinery underground along or across any or all the streets, lanes or alleys of said village  *  *  *  and from time to time to repair the same as may be necessary; they doing no unnecessary injury to the same and restoring the said streets, lanes or alleys as far as may be to their original condition in as short a time as can well be done, so as not to impair their usefulness."

It may be of interest in this connection to state that the village of Fredonia was the first of all municipalities to enjoy the use of natural gas for lighting and heating purposes.

The papers disclose that the defendant the Fredonia Natural Gas Light Company became the owner of this franchise, and for many years distributed natural gas through pipes and mains laid in the streets of the village to consumers of gas; that in time, the supply of natural gas controlled by the company failing, it made gas from coal and supplied manufactured gas through its system of pipes. Later another natural gas company obtained a franchise from the village and proceeded to supply consumers with natural gas in competition with the Fredonia Natural Gas Light Company. The defendant gas light company was unable to compete with its rival, owing to the comparative cheapness of natural gas over manu-

factured gas, and about three years ago ceased to supply consumers with manufactured gas through its pipe lines.   The defendants William E. and Samuel Carroll have become the owners of the stock of the Fredonia Natural Gas Light Company and are also the owners of the capital stock of what is known as the South Shore Natural Gas and Fuel Company, a corporation operating and supplying natural gas in the city of Dunkirk and its vicinity — the city of Dunkirk and the village of Fredonia being only a few miles apart and practically adjoining each other.   The Fredonia Natural Gas Light Company now proposes to connect its mains or pipes with the mains of the South Shore Natural Gas and Fuel Company, and thus acquire a supply of gas for the purpose of providing (at least for the present) against emergencies which may possibly arise when additional fuel is needed for the operation of a heating plant controlled by the defendants Carroll, which plant furnishes heat to the State Normal School and other buildings in the village of Fredonia.   In order to make the proper connections, the Fredonia Natural Gas Light Company has attempted to lay certain pipes in the streets of the village of Fredonia without further license or permission from the village.   The village therefore brought this action to restrain its operation, contending that whatever franchise the defendant formerly enjoyed and exercised has been forfeited and lost by nonuser, and that without a new license or franchise from the village, and the consent of the state public service commission as a condition precedent, the defendant cannot resume operations.

One of the reliefs demanded by the plaintiff is that the franchise granted by the village in 1864 be judicially declared forfeited and no longer in force and effect.

Examining these questions in their logical order, the first inquiry presenting itself for consideration is whether there has, in fact, been any forfeiture by the defendant corporation for nonuser. This involves a careful study of the franchise granted, for the purpose of ascertaining whether there has been any failure on the part of the defendant to fulfill any duty it owed or owes to the village or to the public.

It will be observed that the grant imposed no obligation on the owner of this franchise to convey gas through the pipes laid or to furnish it to consumers. It simply gives the grantees the right to lay and maintain pipes in the streets and highways of the village. It imposes no condition to furnish gas to any one. It has laid and maintained its mains and pipes up to the present time. Can it be claimed that because it has not done something which it did not covenant to do, and which the grant did not provide should be done, that the authorities of the village can, for these reasons, repudiate their grant and declare the franchise forfeited? We think not — and need only invoke the general rule that forfeitures are not favored in law, and a party insisting on a forfeiture must bring himself within the strict letter and terms of any instrument or statute conferring the right. Joyce Franchises, § 478; *Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co.,* 32 Barb. 358.

The gas company has not taken up or removed its mains or pipes in the streets of the village. On the contrary, it has maintained them as laid. It is argued that it has suspended its ordinary and lawful business for more than one year and therefore has forfeited *" its corporate rights, privileges and franchises "* under the provisions of section 101 of the General Corporation Law.

We must not confuse, however, the " corporate

rights, privileges and franchises '' in the statute referred to with the special franchise or right conferred by the action of the village giving the right to lay and maintain a piping system in its streets. The provisions of the statute relate solely to the right of corporate existence and the rights given by the statutes under which a corporation is organized — not the property rights acquired independent thereof. It is perfectly well established that the corporate existence of a company may be terminated either by legislative action or judicial decree; but that such proceedings do not impair property rights of the company dissolved, such as franchise rights in public streets. *People v. O'Brien,* 111 N. Y. 1.

Such rights survive the dissolution of the corporation itself and belong to the creditors and stockholders of the dissolved corporation upon a distribution of its assets.

A proceeding to dissolve the corporation, moreover, must be prosecuted by the attorney-general in the name of the state. Certainly no third party, in a collateral proceeding, is in any position to contend that a corporation has, by a failure to exercise its corporate powers, lost its right to corporate existence. This can only be accomplished by the judgment of a court of competent jurisdiction, in an action brought for that purpose, and the corporation is not dissolved until final judgment has been rendered. See statute.

We, therefore, come back to the original proposition, that the franchise granted to lay and maintain pipes and mains in the streets of the village of Fredonia has not been lost or impaired by the fact that gas has not been piped through them for the last three years.

In any event, we are of the opinion that the village of Fredonia, the plaintiff in this action, is in no posi-

tion to question the validity and existence of the franchise previously granted by it.

The affidavits disclose, and the fact is undisputed, that the village of Fredonia has, for the last three years and more, assessed the gas light company for the value of its special franchise in the streets of the village, and that the company has paid each and every year to the village the tax imposed upon this assessment. This is a recognition by the village of the continued existence of the franchise rights. The receipt and retention by the village of benefits therefrom, upon the plainest principles of law and equity, should estop the plaintiff from now asserting that no such franchise rights exist. A municipal corporation may be estopped in a proper case, and there is ample authority for so holding. *Abells* v. *City of Syracuse,* 7 App. Div. 501–506; *Moore* v. *Mayor,* 73 N. Y. 243–248; *Nelson* v. *Mayor,* 63 id. 535; *North River Electric Light & P. Co.* v. *City of New York,* 48 App. Div. 24; *Sheehan* v. *City of New York,* 37 Misc. Rep. 434.

It is further contended by the plaintiff that the consent of the public service commission is a condition precedent to the lawful resumption of operations by the defendant gas light company. The plaintiff stands on the provisions of section 68 of the Public Service Commissions Law (Laws of 1910, chap. 480). We are, however, unable to discover wherein that section has any application to the circumstances of this case: It reads: '' No gas corporation or electrical corporation shall begin construction of a gas plant or electric plant without first having obtained the permission and approval of the commission of each district within which any part of the work of construction is to be performed. No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise

heretofore granted but not heretofore actually exercised, or the exercise of which shall have been suspended for more than one year, without first having obtained the permission and approval of the proper commission.''

The answer to the plaintiff's contention is that the right claimed by the defendant by virtue of the franchise grant of 1864 has not been suspended for a year, or for any other time.

The grant in question prescribes how pipes shall be laid. It requires that no unnecessary injury shall be done the streets; that they shall be restored to their original condition so as not to impair their usefulness. The defendants are bound to observe these conditions, and nothing presented in the moving papers justifies the court in holding that they have violated, or are about to violate, any of these.

The views we entertain and have endeavored to express in this opinion lead us to the conclusion that the temporary injunction must be vacated, with ten dollars costs of the motion.

Motion denied.