VILLAGE OF FREDONIA v. FREDONIA NATURAL GAS LIGHT CO. et al.

(Supreme Court, Appellate Division, Second Department. October 1, 1915.)

1. QUO WARRANTO ⬤⇒24—CORPORATE FRANCHISES—PERSONS ENTITLED TO REMEDY.

Only the sovereign power can assert a breach of condition of a corporate franchise by action in the nature of quo warranto.

[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 27; Dec. Dig. ⬤⇒24.]

2. GAS ⬤⇒6—FRANCHISE—ESTOPPEL TO DENY EXISTENCE.

A village which, after a gaslight company had ceased to exercise its special franchise, assessed it and received taxes from it, thereby admitted its existence, and was estopped from declaring that no such franchise existed.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 1; Dec. Dig. ⬤⇒6.]

3. GAS ⬤⇒6—FRANCHISE—CONSTITUTION.

Under a village franchise conferring the exclusive privilege of laying gas pipes, etc., underground along or across its streets, with the right of repair, the duty to supply gas was not absolute, and a suspension of such supply did not entitle the village to forfeit the franchise.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 1; Dec. Dig. ⬤⇒6.]

4. GAS ⬤⇒6—FRANCHISE—FORFEITURE—STATUTE.

Where a gaslight company holding a village franchise in April, 1911, suspended its operations, but was assessed and paid taxes, and kept up its corporate existence by meetings of stockholders and directors, the village, seeking to forfeit its franchise, could not invoke Public Service Commissions Law (Consol. Laws, c. 48; Laws 1910, c. 480), providing that no corporation shall exercise any right under any franchise, the exercise of which shall be suspended more than one year, without first obtaining the approval of the Public Service Commission.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 1; Dec. Dig. ⬤⇒6.]

Appeal from Trial Term, Chautauqua County.

Action by the Village of Fredonia against the Fredonia Natural Gas Light Company and others. From a judgment dismissing its complaint on the merits (87 Misc. Rep. 592, 149 N. Y. Supp. 964) plaintiff appeals. Affirmed.

See, also, 154 N. Y. Supp. 1148.

Argued before CARR, STAPLETON, MILLS, RICH, and PUTNAM, JJ.

Louis L. Thrasher, of Jamestown, for appellant.

William S. Stearns, of Fredonia, and George Clinton, Jr., of Buffalo, for respondents.

PUTNAM, J. This appeal from a judgment dismissing the complaint has been transferred to this Appellate Division, pursuant to section 231 of the Code of Civil Procedure. The village of Fredonia seeks to restrain the operation of a franchise to the predecessor of the defendant company. The facts are set forth in the opinion of the Special Term denying the temporary injunction. 84 Misc. Rep. 150, 145 N. Y. Supp. 820. The plaintiff's appeal from this order resulted in the injunction being restored, the Appellate Division of the Fourth Department stating:

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That there is sufficient doubt as to the law and facts involved, respecting the right of the defendant to lay its pipes as proposed, to require the reinstatement of the preliminary injunction until the hearing and determination of the action." 162 App. Div. 924, 146 N. Y. Supp. 1116.

Upon final hearing, the complaint was dismissed on the merits, the court having found and held that the right to lay gas pipes in the streets of Fredonia, and transferred to the Fredonia Natural Gas Company (herein called for brevity the Fredonia Company) had never been forfeited. This franchise had been duly executed by the village authorities on February 29, 1864, under the village corporate seal. After reciting the incorporation of the village and its authority under the act passed May 2, 1829, to provide for public lighting of its streets, there was granted to Messrs. Forbes and Barmon—

"the exclusive privilege of laying their gas pipes and other machinery under ground along or across any or all the streets, lanes, or alleys of said village (excepting the exclusive privilege of that part of Main street from Center street to the stone bridge), and from time to time to repair the same as may be necessary, they doing no unnecessary injury to the same, and restoring the said streets, lanes, or alleys, so far as may be, to their original condition, in as short a time as can well be done, so as not to impair their uefulness."

For many years the Fredonia Company, as owner of this franchise, used in its mains gas from natural gas wells; after that source failed it supplied manufactured gas from coal. In 1905 another franchise was granted to the Frost Gas Company, which thereupon furnished natural gas in competition with the Fredonia Company. In April, 1911, the Fredonia Company, being unable to carry on the competition, stopped supplying gas. In 1912 defendants William and Samuel Carroll became owners of the stock of the Fredonia Company. They also control the South Shore Natural Gas & Fuel Company (which supplies natural gas to the neighboring city of Dunkirk), and has a high pressure main extending practically to the Fredonia village line. The defendants Carroll also conduct a steam heating plant in Fredonia, which furnishes steam to some 50 or 60 local consumers who include the Normal School, churches, schools, business establishments, and private residences. On December 22, 1913, the Fredonia Gas Company, by William Carroll as manager, sent to the village trustees of Fredonia a letter, stating that it proposed under its franchise to lay a four-inch gas main through certain streets to the heating plant, and desired the co-operation of the village authorities. Counsel for the Frost Company attended the ensuing meeting of the village trustees. The next day the Frost Company wrote officially to the president of the village, undertaking to bear all expenses in connection with testing the validity of the Fredonia Gas Company's franchise. This suit then followed, in which the Messrs. Carroll are also joined as defendants.

It appears that, after the Fredonia Company's activity was dormant, its special franchise was assessed, and the taxes were paid thereon. The justice vacating the injunction held that:

"The receipt and retention by the village of benefits therefrom, upon the plainest principles of law and equity, should estop the plaintiff from now asserting that no such franchise rights exist."

Plaintiff also invokes the Public Service Commissions Law (Consol. Laws, c. 48; Laws of 1910, c. 480). In March, 1912, within a year after it stopped its operations, the Fredonia Company presented to the Public Service Commission a petition setting forth that it had ceased supplying gas because the business yielded less than $25 a month against monthly expenses of $300. It prayed for permission to suspend its business of manufacturing illuminating gas until the further order of the Commission, without prejudice to petitioner's right to re-engage in the business under its franchise in said village. The Public Service Commission dismissed this application for want of jurisdiction. The Fredonia Company filed no reports with the Public Service Commission for the years 1911, 1912, and 1913; but it kept up its corporate existence by meetings of its stockholders and directors.

Upon the trial, an employé of the Frost Company testified that gas leaking from mains may injure shade trees. It was objected that this was not within the issues; also that such damage would be subject to remedy by the individual owners. There was also evidence that certain of defendant's mains in Main and Church streets had become rusted. These pipes, however, were not part of the connection proposed to be made with the heating plant. It nowhere appears that plaintiff or the inhabitants of the village had ever made any demand on defendant to furnish gas, after it stopped its manufacture.

Aside from the question of this suit, nominally by the village, being really in the interests of the Frost Company, the legal issue may be put thus: Did the nonuser above stated entitle the village of Fredonia to sue in equity to enforce a forfeiture of the respondent's franchise? Mr. Justice Pound has found that the Fredonia Company never surrendered or abandoned the right or privilege granted by plaintiff to Forbes, its assignor, nor has it ever suspended or discontinued the exercise of the same; that it stopped furnishing gas, as at the time of such discontinuance it had substantially no consumers remaining to take gas from its lines. From this he concluded that the right or privilege granted to Forbes, and assigned to the Fredonia Company, is still in full force and effect. He added:

"It is not every nonuser that will furnish grounds for a forfeiture. To work a forfeiture there should be something wrong; and not only a wrong but one arising from willful abuse or improper neglect; such neglect as indicates an indifference to the demands of public duty." People v. B. & R. Turnpike Co., 23 Wend. 236; People v. Atlantic Ave. R. R. Co., 125 N. Y. 531 [26 N. E. 622]. Forfeiture is a punishment for fault, not for misfortune."

The learned justice goes on to show that this franchise contains no condition as to furnishing gas. He adds significantly:

"The village has not even attempted to revoke it, except by bringing this action, which seems to be in the interest of the rival company rather than the village as such. A competitor should not be thus eliminated unless the law plainly so declares."

It appears that before this decision the plaintiff had petitioned the Attorney General to institute a suit to dissolve the Fredonia Gas Company. It also asked to have the Forbes franchise annulled at

the suit of the people. Both these applications were denied in an opinion of Deputy Attorney General Kellogg, on May 18, 1914 (2 Reports Atty. Gen. 1914, pp. 228–232). On this appeal it is again urged that the village of Fredonia has a standing to question the validity of the franchise, and may claim a forfeiture from the alleged nonuser.

[1, 2] The accepted doctrine that only the sovereign power can assert a breach of condition of a corporate franchise by action in the nature of quo warranto (Elizabethtown Gaslight Co. v. Green, 46 N. J. Eq. 118, 18 Atl. 844; Joyce on Franchises, § 486) is recognized in this state (City of New York v. Bryan, 196 N. Y. 158, 89 N. E. 467). Further, the village of Fredonia cannot tax this franchise without admitting its existence. Such a power to tax has been supported by the doctrine of estoppel, which makes out a franchise from the fact that such pipes are suffered to lie under public streets. People ex rel. United Natural Gas Co. v. Priest, 152 App. Div. 249, 136 N. Y. Supp. 575. The rule of estoppel works both ways. The act of levying and accepting taxes upon such a franchise must clearly debar the municipality from thereafter declaring that no such taxed right exists.

[3, 4] Considering that this franchise was unconditional, the duty to continue to supply gas was not absolute. The suspension of such supply, as here appears, did not entitle plaintiff to the relief sought. We are also of opinion, for the reasons stated, that plaintiff cannot invoke section 68 of the Public Service Commissions Law in this proceeding.

Without resorting to a court of equity, plaintiff has a continuing, valid, and effective remedy against defective pipes, or through possible maladministration in laying, securing, and operating the mains which defendants propose to install. This is under its legislative power, by proper and reasonable municipal ordinances.

The judgment should therefore be affirmed, with costs. All concur.